[No. F050590. Fifth Dist. Apr. 28, 2008.]

CENTRAL VALLEY GENERAL HOSPITAL, Plaintiff, Cross-defendant and Appellant, v.
BRENTON SMITH et al., Defendants, Cross-complainants and Respondents;
ADVENTIST HEALTH SYSTEMS/WEST et al., Cross-defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of subparts E.–G. of part V. and parts VI. and VII.

**COUNSEL**

Latham & Watkins, Susan S. Azad, Alexandra A. Roje and Elliot B. Gipson for Plaintiff, Cross-defendant and Appellant and for Cross-defendants and Appellants.

Doyle, Fike & Watson, David Douglas Doyle; Law Offices of William A. Romaine, William A. Romaine; Jones Day and George S. Howard, Jr., for Defendants, Cross-complainants and Respondents.

**OPINION**

**DAWSON, J.**—This appeal concerns a hospital's proposed acquisition of rural health clinics from a medical group. The acquisition was not completed because disputes arose prior to the closing. The hospital terminated the agreement and sued for the return of a $250,000 payment, alleging an anticipatory breach of contract resulted from the medical group's inability to make certain representations and warranties required by the agreement. The medical group cross-complained for an injunction to protect the confidential information it disclosed to the hospital during the due diligence period.

After a voluntary general reference, a referee issued a statement of decision that determined (1) the hospital had not taken the proper steps to assert a claim for anticipatory breach of contract and (2) the medical group was entitled to an injunction that (a) prohibited the hospital from using the confidential information and (b) required the hospital to return certain confidential materials.

We conclude the judgment and injunction must be reversed and the matter remanded for further proceedings.

We publish the portions of this opinion that address the questions (1) whether a nonrepudiating party must sue for damages immediately upon learning of the events that constitute an anticipatory breach, and (2) whether a claim for anticipatory breach is precluded where executory covenants in the contract remain unperformed by the repudiating party.

We answer both questions in the negative. An injured party retains the right to treat a repudiation as an anticipatory breach until the repudiation is nullified. Further, "one party's repudiation discharges any remaining duties of performance of the other party with respect to the expected exchange." (Rest.2d Contracts, § 253, com. b, p. 287.)

We also publish the portion of this opinion in which we address the question whether California law authorizes the issuance of injunctive relief based on threatened misappropriation of trade secrets. Based on Civil Code section 3426.2, subdivision (a), we answer that question in the affirmative. California's rejection of the inevitable disclosure doctrine does not mean that threatened misappropriation also must be rejected as a basis for injunctive relief.

## FACTS

*Parties*

Central Valley General Hospital (CVG Hospital), a nonprofit corporation that operates a hospital in Hanford, is plaintiff in this lawsuit. CVG Hospital also is a cross-defendant.

Cross-defendant Adventist Health System/West (Adventist) is a California corporation that owns both CVG Hospital and Hanford Community Medical Center.

Cross-defendant Steven Rosenberg is the president of The Center for Health Care Delivery Alternatives, Incorporated, which does business as Rosenberg & Associates (Rosenberg). Rosenberg provides consulting services and specializes in the health care field of servicing vulnerable populations. CVG Hospital engaged Rosenberg to assist its due diligence review.

Cross-defendant Darwin Remboldt was the chief executive officer of Hanford Community Medical Center in Hanford, California. He also served on the board of trustees of CVG Hospital.

CVG Hospital, Adventist, Rosenberg and Remboldt constitute all of the cross-defendants and are referred to in this opinion collectively as Hospital Group.

Brenton Smith, M.D., an individual residing in Riverdale, California, is a defendant and cross-complainant in this lawsuit. Smith is a principal of the other defendants.

Central Valley Health Services Corporation, Inc., a California corporation; CVHS, LLP, a California limited liability partnership; Valley Family Health Center, Medical Group, Inc., a California professional medical corporation; Central Valley Maternal and Child Care Centers, Medical Group, Inc., a California professional medical corporation; Central Valley Multispecialty Medical Group, Inc., a California professional medical corporation; and Selma Emergency Physicians, a California professional medical corporation, are defendants and cross-complainants in this lawsuit. For purposes of this opinion, Smith and these entities are referred to as Smith and Affiliates or S&A.

*The Letter of Intent*

On March 19, 2002, CVG Hospital and Smith and Affiliates entered a 16-page letter of intent that set forth the principal terms for the acquisition by

CVG Hospital of certain assets associated with the health care delivery operations of Smith and Affiliates. The assets included rural health clinics and other professional medical practices of Smith and Affiliates in Kings and Fresno Counties.

Section 1(a) of the letter of intent provided CVG Hospital with a 90-day diligence review period during which it had the exclusive right to examine and investigate the businesses, properties, books and records of Smith and Affiliates for the purpose of determining whether to proceed with the acquisition and other transactions contemplated by the letter of intent. Section 1(a) also provided: "CVG [Hospital] shall notify Smith and Affiliates in writing prior to expiration of the Diligence Review Period in the event that CVG [Hospital] determines that it shall not proceed with the Transactions . . . ."

Section 1(b) of the letter of intent provided for an interim closing date after CVG Hospital finished its diligence review and elected to exercise its option to purchase the assets covered by the letter of intent.

Section 3(a) of the letter of intent required CVG Hospital to pay Smith and Affiliates $250,000 upon execution of the letter of intent as "consideration for the obligations of Smith and Affiliates as set forth in Section 1 above and CVG [Hospital]'s exclusive option to effect the Transactions as also set forth in Section 1 above." This subsection also stated that the payment "shall be nonrefundable subject to the terms and conditions set forth in Section 14(a) . . . ."[1]

Section 14 stated that the letter of intent "may be terminated by CVG [Hospital] as set forth in Section 1." The circumstances under which the $250,000 payment became nonrefundable are stated as follows: "Provided that Smith and Affiliates are not in material breach hereof during the Diligence Review Period and provided further that all Interim Closing conditions to be performed by Smith and Affiliates in favor of CVG [Hospital] as herein defined in Section 8 (including the deliveries set forth in Section 12) have been satisfied, the [$250,000 payment] shall be non-refundable and retained by Smith and Affiliates as liquidated damages in the event the Transactions as contemplated hereunder are not consummated as set forth herein as a result of CVG [Hospital]'s refusal or inability to do so."

Section 12 of the letter of intent set forth the obligations that each party was required to fulfill in connection with the interim closing. These obligations included the execution and delivery of definitive agreements necessary

---

[1] As observed by the referee, the letter of intent has a section 14, but that section has no subsections. Consequently, the referee and this court have interpreted the reference to section 14(a) to mean section 14 of the letter of intent.

to consummate the transactions contemplated by the letter of intent. Section 8 of the letter of intent listed the definitive agreements and stated that they shall include representations and warranties regarding, among other things, "(D) completeness[,] accuracy and conformance to generally accepted accounting principles of financial statements and Books and Records, and absence of changes therefrom, . . . (F) compliance with governing instruments, contracts and laws, . . . [and] (I) complete disclosure of material facts . . . ."

Section 18(a) of the letter of intent was a confidentiality provision. It stated that a party receiving confidential information "agrees to keep all such information confidential that is not in the public domain exercising the same care in handling such information as it would exercise with similar information of its own and, if requested, to return any such written information to the providing Party in the event that negotiations are not pursued."

*Due Diligence and Related Disputes*

Shortly after the letter of intent was signed, CVG Hospital began its due diligence review of clinic operations, including the clinics' financial and billing operations. The due diligence review did not go smoothly.

CVG Hospital asserts that Smith halted the due diligence review in late March 2002 and demanded CVG Hospital sign a separate indemnification letter agreeing not to assert a whistleblower action related to billing irregularities at the clinics. Smith asserts he was concerned that the individuals conducting the review might not strictly comply with the confidentiality provision in the letter of intent. The parties agree that CVG Hospital did not sign the agreement offered by Smith and Affiliates. CVG Hospital, however, did agree to indemnify Smith and Affiliates for any wrongful disclosures to a third party by CVG Hospital or its employees, agents, or representatives. Once the indemnification agreement was in place, the due diligence review continued.

CVG Hospital contends that, in early April 2002, Rosenberg discovered Smith and Affiliates appeared to be engaged in duplicate billing, which made it impossible for Rosenberg to perform a compensation analysis and to confirm the value of assets. In CVG Hospital's view, the billing irregularities raised serious concerns about whether Smith and Affiliates could make the representation and warranty required by the letter of intent that it had complied with all laws. In addition, CVG Hospital contends that Smith and Affiliates did not cooperate with its requests for information during the due diligence review.

On May 7, 2002, Smith and Affiliates expelled the Rosenberg due diligence teams from the clinics.

The parties met and conferred to discuss their differences on May 31, 2002, and again on June 6, 2002. In a letter dated June 10, 2002, CVG Hospital proposed terms under which it was willing to resolve the matter. Smith and Affiliates rejected the proposal.

Counsel for CVG Hospital sent a letter dated June 17, 2002, to the attorneys for Smith and Affiliates that asserted claims for breach of contract and fraud. The letter also stated that CVG Hospital "notifies Smith and Affiliates that CVG [Hospital] cannot and shall not proceed with the transactions contemplated by the [letter of intent]." CVG Hospital demanded the return of the $250,000 payment and other damages, including the expenses incurred in connection with the letter of intent. As a result, the interim closing contemplated by the letter of intent was never held.

The parties met a final time to confer on their differences. They did not reach an agreement and this lawsuit began.

## PROCEEDINGS

On July 11, 2002, CVG Hospital sued Smith and Affiliates to recover the $250,000 payment and various expenses and professional fees incurred in connection with the transactions contemplated by the letter of intent. Smith and Affiliates answered the complaint with a general denial and cross-complained for damages as well as declaratory and injunctive relief against Hospital Group. They alleged Hospital Group engaged in (1) unlawful or unfair business practices under Business and Professions Code section 17200 et seq., (2) misappropriation of trade secrets, and (3) fraud and deceit. They requested an injunction to protect their trade secrets and confidential information.

Pursuant to a provision in the letter of intent and Code of Civil Procedure section 638, the superior court appointed a referee and directed him to "hear and determine all of the issues in the action, whether of fact or law, and report a statement of decision. . . ." The referee conducted an 18-day trial starting in October 2003 and ending in February 2004. The referee's initial statement of decision was served on the parties in November 2004.

The referee concluded that Smith and Affiliates were prevailing parties on both the complaint and the cross-complaint and that an injunction should issue (1) prohibiting Hospital Group from using the patient records, trade secrets, and proprietary information they obtained pursuant to the letter of intent and (2) commanding them to return confidential materials to Smith and Affiliates.

After a series of objections and responses, the referee signed a revised statement of decision in November 2005 and a second revised statement of decision on December 2, 2005. The second revised statement of decision was filed with the superior court on December 12, 2005.

On February 6, 2006, the referee filed an injunction with the superior court, the terms of which were narrower and more specific than the terms of the injunction proposed in the second revised statement of decision. It stated that the confidentiality provisions of the letter of intent were incorporated by reference into the injunction, directed Hospital Group to return certain documents to Smith and Affiliates and to destroy other documents, and permitted Hospital Group to retain certain redacted documents and documents that constituted attorney work product.

Less than three weeks later, Hospital Group filed five declarations that described the measures taken to comply with the injunction filed by the referee in February.

The judgment in this case is contained in a stipulation, order and judgment nunc pro tunc, which was filed by the superior court on March 8, 2006. The judgment, in accordance with the revised second statement of decision, was in favor of Smith and Affiliates on CVG Hospital's complaint and in favor of Smith and Affiliates on their cross-complaint against Hospital Group. It was "to be nun [sic] pro tunc to December 12, 2005."

In April 2006, Smith and Affiliates filed a motion to enter an injunction in accordance with the second revised statement of decision. Smith and Affiliates filed the motion because the superior court had not filed an injunction and, in their view, the referee's February 6, 2006, injunction was ineffective because the referee was not authorized to file it.

Smith and Affiliates' motion to enter an injunction in accordance with the second revised statement of decision, as well as a motion to tax costs, was heard by the superior court on May 23, 2006. The motion to tax costs was granted in part and denied in part. For example, the superior court allowed Smith and Affiliates to recover the filing fee related to an unsuccessful motion and denied Smith and Affiliates' request to recover $57,708.29 in referee's fees and $5,160 in document storage fees.

With respect to the motion to enter the injunction, the superior court determined that it, not the referee, had jurisdiction over matters that arose after the entry of the second revised statement of decision. The superior court also determined that the second revised statement of decision became the decision of the court once it was filed by the referee on December 12, 2005.

Consequently, the superior court determined the narrower terms in the injunction filed by the referee on February 6, 2006, were not appropriate. Based on these determinations, the superior court concluded that (1) it was required to enter an injunction consistent with the second revised statement of decision and (2) the February injunction had no effect.

On May 31, 2006, the superior court filed an injunction that implemented the terms contained in the second revised statement of decision. Hospital Group was "prohibited from using the patient records, trade secrets and/or proprietary information obtained from [Smith and Affiliates] pursuant to the Letter of Intent . . . in any manner whatsoever against the interests of [Smith and Affiliates], except as may be otherwise provided by law." The injunction also required Hospital Group to return documents and information "reflecting patient records, trade secrets and/or proprietary information" belonging to Smith and Affiliates within 30 days of the injunction.

Hospital Group filed a notice of appeal from the judgment entered pursuant to the second revised statement of decision and the May 2006 order granting the motion to enter an injunction in accordance with the second revised statement of decision.

## DISCUSSION

### I. *Standard of Review*

On appeal, Hospital Group contends that the referee's second revised statement of decision contains reversible error with respect to (1) the issuance of an injunction and (2) the determination that CVG Hospital did not establish its claim for anticipatory breach of contract.

Accordingly, we must identify the rules of review that appellate courts use to determine whether a statement of decision reported by a referee contains reversible error.

#### A. *Voluntary General References*

Code of Civil Procedure section 638, subdivision (a) provides that a referee may be appointed by agreement of the parties to "hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision." The parties voluntarily agreed in section 17 of the letter of intent to submit claims to a retired judge or justice appointed pursuant to Code of Civil Procedure section 638.

Based on the letter of intent and the statute, the superior court appointed a referee and directed the referee to "hear and determine all of the issues in the action, whether of fact or law, and report a statement of decision. . . ."

A statement of decision reported by a referee under a voluntary general reference is the equivalent of a statement of decision rendered by a superior court under Code of Civil Procedure section 632. (*In re Marriage of Demblewski* (1994) 26 Cal.App.4th 232, 235–236 [31 Cal.Rptr.2d 533].) As a result, a referee's statement of decision is reviewed by an appellate court using the same rules that apply to a trial court's statement of decision. (*Ibid.*)

Under the general rules applicable to a trial court's statement of decision, an appellate court independently reviews questions of law and applies the substantial evidence standard to findings of fact. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [questions of law are subject to independent review]; *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] [substantial evidence rule].)

B. *Adequacy of the Statement of Decision*

The specific rules concerning the adequacy of a statement of decision are derived from the Code of Civil Procedure. Section 632 requires a statement of decision to explain "the factual and legal basis for [the] decision as to each of the principal controverted issues" of the case.

Appellate review of a statement of decision is addressed in Code of Civil Procedure section 634: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."[2]

Sections 632 and 634 of the Code of Civil Procedure have been interpreted to mean that a statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case. (E.g., *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500 [61 Cal.Rptr.3d 754].) When this rule is applied, the term "ultimate fact" generally refers to a core fact, such as an essential element of a claim. (E.g., *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559 [66 Cal.Rptr.3d 1].) Ultimate facts are distinguished from evidentiary facts and from legal conclusions. (*Ibid.*; *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67 [76 Cal.Rptr.2d 356] [Ct. App., 5th Dist.].)

---

[2] Code of Civil Procedure section 657 contains the standards and procedures for motions for new trial, and section 663 sets forth the grounds upon which a motion to vacate a judgment may be granted. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 465, fn. 7 [17 Cal.Rptr.3d 96].)

## II. *Repudiation and Anticipatory Breach*

### A. *General Principles*

■ California law recognizes that a contract may be breached by nonperformance,[3] by repudiation, or a combination of the two. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 849, pp. 936–937.)

A repudiation may be express or implied. (*Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 [123 Cal.Rptr. 641, 539 P.2d 425] (*Taylor*).) In this case, the repudiation alleged is implied. "[A]n implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible [citations]." (*Ibid.*)[4]

■ A repudiation may have several consequences. When a repudiation occurs before any breach by nonperformance,[5] there are three main consequences. (Rest.2d Contracts, § 250, com. a, pp. 272–273; see *id.*, § 256, com. a, pp. 293–294.)[6] First, the repudiation "may give rise to a claim for damages for total breach . . . ." (Rest.2d Contracts, § 256, com. a, p. 293; see *id.*, § 253, subd. (1), p. 286.) Second, it may discharge the other party's duties to render performance. (*Id.*, subd. (2), p. 286.) Third, it may excuse the nonoccurrence of a condition to a duty of the repudiating party. (*Id.*, § 255, p. 291.)

■ Breach by repudiation is referred to in the case law as an "anticipatory breach." (E.g., *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) As a matter of definition, an anticipatory breach of contract occurs when the contract is repudiated by the promisor before the promisor's performance under the contract is due. (*Taylor, supra,* 15 Cal.3d at p. 137.)

---

[3] We use the phrase "breach by nonperformance" to mean an unjustified failure to perform a material contractual obligation when performance is due. The Restatement Second of Contracts uses this phrase. (E.g., Rest.2d Contracts, § 251, subd. (1), p. 276.)

[4] Similarly, Restatement Second of Contracts section 250 provides that a repudiation is "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without . . . a [total] breach." (Rest.2d Contracts, § 250, subd. (b), p. 272.) Comment c states that "to constitute a repudiation, a party's act must be both voluntary and affirmative, and must make it actually or apparently impossible for [the party] to perform." (*Id.*, com. c, p. 274.)

[5] Our discussion excludes those situations where partial nonperformance is combined with a repudiation.

[6] In *Guerrieri v. Severini* (1958) 51 Cal.2d 12 [330 P.2d 635] (*Guerrieri*), the California Supreme Court relied upon the prior version of the Restatement of Contracts in its discussion of breach by repudiation. (*Guerrieri*, at pp. 19–20.) Consequently, we conclude it is appropriate to rely on the Restatement Second of Contracts in this case.

B. *Specific Principles Relevant to This Case*

■ In *Taylor*, the California Supreme Court set forth the following principles regarding repudiation, nullification, and anticipatory breach: "When a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and *immediately* seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time. [Citation.] However, if the injured party disregards the repudiation and treats the contract as still in force, and the repudiation is retracted prior to the time of performance, then the repudiation is nullified and the injured party is left with his remedies, if any, invocable at the time of performance. [Citations.]" (*Taylor, supra,* 15 Cal.3d at pp. 137–138, italics added.)

The interpretation of these two sentences from *Taylor*, especially the significance of the word "immediately," is the source of disagreement between the parties.

C. *Repudiation and Nullification Under* Taylor

1. *Referee's interpretation of* Taylor

The referee interpreted and applied *Taylor* as follows: "The only way for CVG [Hospital] to have required S&A to perform was, as stated in *Taylor, supra,* to have treated S&A's suspected inability to perform as an anticipatory breach and to have <u>immediately</u> sought damages for breach of contract, which would have terminated the contractual relation between CVG [Hospital] and S&A. Having chosen not to do so, CVG [Hospital] was left with its remedies, if any, invocable at the time of performance but for its Termination Notice during the Diligence Period (Ex. 59), which . . . brought the [letter of intent] to one of its possible conclusions. In other words, CVG [Hospital] could have (1) immediately sued for anticipatory breach of contract, terminated the contractual relation between the parties and sought provable damages, if any, or (2) elected to proceed with the Transactions and sought provable damages from S&A if S&A, in fact, could not perform. CVG [Hospital] did neither." (Original underscoring.)

The importance that the referee attached to CVG Hospital's decision to deliver the termination notice instead of proceeding with the transactions is demonstrated further by the following two paragraphs from the second revised statement of decision.

"At bar, CVG [Hospital] promised to decide whether or not to proceed with the Transactions within the Diligence Period. Different consequences, vis-à-vis S&A, flowed from that decision, whether or not to proceed.

"First, if CVG [Hospital] decided to proceed and S&A could not respond as required in the [letter of intent], the avenues of recourse available to CVG [Hospital] are obvious. Second, if CVG [Hospital] was aware of an anticipatory breach, or breaches, on the part of S&A, CVG [Hospital] should have immediately terminated the [letter of intent] and proceeded to prove the breach, or breaches, and damages, if any. It did not do that. Some of what CVG [Hospital] refers to as anticipatory breaches were known to it months before they were raised as such and, therefore, were waived. Third, CVG [Hospital] terminated the [letter of intent] by Ex. 59, not because of the anticipatory breaches outlined, which were either stale, waived or premature, but according to an internal mechanism set forth [in] Sec. 1(a) which ended the [letter of intent]."

Based on the foregoing, Smith and Affiliates contend that the referee correctly determined that CVG Hospital did not timely pursue its claims for anticipatory breach. Smith and Affiliates also contend that "the inquiry into whether CVG [Hospital] timely elected to terminate the [letter of intent] and pursue anticipatory breach claims was essentially a factual question and should be reviewed for substantial evidence."

### 2. *Our interpretation of* Taylor

We disagree with the referee's interpretation of *Taylor* and the way in which the word "immediately" was applied to the facts of this case. In our view, the following is a correct statement of the law of California: A party to a contract does not lose the right to treat an implied repudiation of the contract as an anticipatory breach by failing to seek damages immediately after learning of the events that constitute the implied repudiation.

The California Supreme Court stated that an injured party "*can* treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract . . . ." (*Taylor, supra*, 15 Cal.3d at p. 137, italics added.) This language *authorizes* the injured party to immediately seek damages, but it does not necessarily *require* the party to seek damages immediately or lose the right to treat the repudiation as an anticipatory breach. In essence, the first sentence of the quote from *Taylor* describes the earliest point at which an injured party may seek damages. It does not say that the earliest point is the only point. Nor does that sentence identify the last point at which a repudiation may be treated as an anticipatory breach.

The second sentence of the quote from *Taylor* indicates when the injured party may no longer treat a repudiation as an anticipatory breach. It

describes when "the repudiation is nullified and the injured party is left with his remedies" for breach by nonperformance. (*Taylor, supra*, 15 Cal.3d at p. 138.) Specifically, a repudiation is nullified "if the injured party disregards the repudiation and treats the contract as still in force, and the repudiation is retracted prior to the time of performance . . . ." (*Id.* at pp. 137–138.) Thus, the California Supreme Court has identified three conditions that combine to nullify a repudiation.

The first condition is "the injured party disregards the repudiation . . . ." (*Taylor, supra*, 15 Cal.3d at p. 137.) The second condition is "the injured party . . . treats the contract as still in force . . . ." (*Id.* at pp. 137–138.) The third and most important condition is that "the repudiation is retracted prior to the time of performance . . . ."[7] (*Taylor, supra*, at p. 138.) The three conditions are joined by the word "and," not "or." (*Ibid.*) "And" is conjunctive, while "or" is disjunctive. (*Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 [80 Cal.Rptr.2d 803, 968 P.2d 514].) Therefore, the language used by the California Supreme Court plainly means that all three conditions must exist before "the repudiation is nullified and the injured party is left with his remedies" for breach by nonperformance. (*Taylor, supra*, 15 Cal.3d at p. 138.)

Furthermore, by stating that an injured party is left with his remedies for breach by nonperformance when a nullification occurs, the court implied that an injured party retains the right to treat a repudiation as an anticipatory breach until the repudiation is nullified.[8] In short, the referee adopted the wrong legal standard when he interpreted *Taylor* to mean that a party loses[9] the right to sue for anticipatory breach if it does not pursue a claim for damages immediately upon becoming aware of the alleged repudiation.

---

[7] The concept of retraction is best suited for cases involving an express repudiation. (See Rest.2d Contracts, § 256, subd. (1), p. 293.) When a repudiation is implied from events, the equivalent of a retraction occurs when the events constituting the implied repudiation "have ceased to exist . . . ." (*Id.*, § 256, subd. (2), p. 293 [nullification of repudiation].)

[8] This view of nullification is consistent with the Restatement Second of Contracts. (See Rest.2d Contracts, § 256, com. a, pp. 293–294 [nullification of a repudiation leaves the injured party with no claim, but a claim may arise later if a breach by nonperformance takes place].)

[9] The referee referred to waiver of the breach. The loss of a right can result from either waiver or forfeiture. A forfeiture results from the failure to make a timely assertion of a right. (*People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [108 Cal.Rptr.2d 385, 25 P.3d 598].) In contrast, a waiver is the intentional relinquishment or abandonment of a known right or privilege. (*In re Sheena K.* (2007) 40 Cal.4th 875, 881, fn. 1 [55 Cal.Rptr.3d 716, 153 P.3d 282].)

In this case, substantial evidence does not support a finding that CVG Hospital intended to relinquish its right to treat the alleged repudiation as an anticipatory breach. Thus, the question becomes one of forfeiture by untimely assertion. The decision to treat a repudiation as an anticipatory breach is timely so long as it occurs before (1) nullification of the repudiation or (2) the time for performance of the contract.

■ Our interpretation of *Taylor* is consistent with earlier statements by the California Supreme Court about nullification. In *Guerrieri, supra,* 51 Cal.2d 12, the court observed: "As stated in section 320 of the Restatement of Contracts: 'Manifestation by the injured party of a purpose to allow or to require performance by the promisor in spite of repudiation by him, does not nullify its effect as a breach, or prevent it from excusing performance of conditions and from discharging the duty to render a return performance. [¶] 'Comment: [¶] a. Although the effect of repudiation may be nullified . . . it operates until so nullified not only as a breach but as a continuing excuse of conditions . . . and as a continuing justification of the promisee's failure to perform a return promise . . . even though the promisee has indicated a willingness to forgive the repudiation.' (See also Civ. Code, § 1440.)" (*Guerrieri, supra,* at pp. 19–20.)

Based on *Taylor* and *Guerrieri,* we conclude that the California Supreme Court has adopted the view that a repudiation operates as a breach until it is nullified.

### 3. *Secondary authorities*

How much time an injured party has to elect to treat a repudiation as an anticipatory breach is addressed by Williston on Contracts: "On the one hand, it is frequently said that the election must be promptly made; but it has also been held that unless the repudiation is withdrawn it operates as a 'continuing offer' of a breach, of which the promisee may take advantage at any time." (23 Williston on Contracts (4th ed. 2002) § 63:56, pp. 667–668, fns. omitted.) The view adopted by California—that a repudiation may be treated as an anticipatory breach until it is nullified—is similar to the latter of the two approaches described in Williston on Contracts.

Treatises also have addressed what happens when an injured party learns of a repudiation and pursues other avenues before bringing a lawsuit for anticipatory breach. For instance, an injured party that urges performance does not waive the repudiation. (1 Witkin, Summary of Cal. Law, *supra,* § 866, p. 954.)

As stated in Williston on Contracts, ". . . Under the early law, if the promisee, after receiving the repudiation, demanded or manifested a willingness to receive performance, his or her rights were lost. [T]he promisee thereafter [was] barred from bringing an action on the repudiation . . . . [¶] This [early] view resulted in a severe penalty imposed upon the injured party for not seizing the right moment. When A repudiates its promise, nothing is more natural and reasonable than for B to urge A to perform. Yet [under the early view], if B does so, it seems that not only does B lose the right of

immediate action, but B is bound to perform its own promise, even though it has reason to expect that A will not perform its promise, as a condition of holding A, the repudiator, liable after the time for performance arrives." (23 Williston on Contracts, *supra*, § 63:53, pp. 657–658, fns. omitted.)

The California Supreme Court has not followed the "early law," and its approach to repudiation and nullification does not penalize an injured party for attempting to resolve the difficulties created by a repudiation. If any such attempts do not result in the nullification of the repudiation or a modification to the contract, then the injured party may pursue a claim for anticipatory repudiation. (*Guerrieri, supra,* 51 Cal.2d at pp. 19–20; see also *Lucente v. International Business Machines Corp.* (2d Cir. 2002) 310 F.3d 243, 259 [nonrepudiating party does not have specific time limit to elect to treat a repudiation as an anticipatory breach and "generally, an election need not be made until the time comes when the party making the election must render some performance under the terms of the contract. [Citation.]"].)

### D. *Conclusion*

■ Our review of the second revised statement of decision shows that the referee applied incorrect rules of law in deciding that CVG Hospital failed to establish its claim for anticipatory breach. The legal error concerns how long an injured party has to treat a repudiation as an anticipatory breach. In this case, CVG Hospital should have been allowed to treat a repudiation as an anticipatory breach until such repudiation was nullified or performance was due.[10] Therefore, the judgment must be reversed and the matter remanded for application of the correct rules of law regarding repudiation, nullification, and anticipatory breach.

### III. *Anticipatory Breach and Executory Covenants*

The second revised statement of decision sets forth an alternate ground for the conclusion that CVG Hospital could not establish a contract claim based on breach by repudiation: "Also, the doctrine of anticipatory breach has no application where executory covenants remain unperformed by the promisor . . . ." (See 1 Witkin, Summary of Cal. Law, *supra*, § 861, pp. 948–949, citing *Vitagraph, Inc. v. Liberty Theatres Co.* (1925) 197 Cal. 694 [242 P. 709] (*Vitagraph*).)

It appears that the second revised statement of decision applied this principle in the following discussion:

---

[10] This statement assumes a repudiation existed. On remand, whether the conduct of Smith and Affiliates was an implied repudiation is a question for the trier of fact.

"The contract was executory until CVG [Hospital] decided either to proceed to the Interim Closing or, upon first ascertaining evidence of S&A's anticipatory breach to have immediately terminated the [letter of intent] and sought damages for the anticipatory breach. If CVG [Hospital] decided to proceed to the Interim Closing at any time during the Diligence Period, S&A may have been in breach, anticipatorily or otherwise, in which case CVG [Hospital] could have exercised its options, as far as the breach is concerned, and proved its damages, if any.

"S&A's Sec. 8 and Sec. 12 obligations were conditional (see, Sec. 1(b)) until CVG [Hospital] decided to proceed or properly terminated the [letter of intent] by either timely suing for anticipatory breach, which it did not do, or gave S&A its Termination Notice (see, below).

"CVG [Hospital] did terminate consistent with Sec. 1(a) by Ex. 59, dated June 17, 2002. In Ex. 59 CVG [Hospital] asserted claims against S&A, pursuant to Sec. 17 of the [letter of intent], and notified S&A 'that CVG [Hospital] cannot and shall not proceed with the transactions contemplated in the [letter of intent].' "

■ The proposition that an action for damages for an anticipatory breach does not lie where executory covenants have not been performed by the nonrepudiating party is not an established principle of California law.

■ First, the court in *Vitagraph* did not apply that proposition and, therefore, the court's decision does not establish precedent for that proposition's existence. (See *DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 739 [278 Cal.Rptr. 778] [case does not stand for proposition neither discussed nor analyzed].)

In *Vitagraph*, the court stated: "It may be doubted that an action for damages for an anticipatory breach will lie in a case where there are executory covenants unperformed on the part of the plaintiff which are precedent to those which have been repudiated by the defendant, the performance of which has not been *prevented* by the defendant (*Bradbury v. Higginson*[ (1912) 162 Cal. 602,] 609 [123 P. 797]). As this question has not been briefed or argued herein we shall not undertake to pass upon it." (*Vitagraph, supra*, 197 Cal. at p. 700.) The court then assumed a damages claim for anticipatory breach existed and determined that the plaintiff's proof was insufficient to sustain an award of damages. (*Id.* at pp. 700–701.) Consequently, the *Vitagraph* decision is not precedent on the issue concerning the effect of the failure to perform executory covenants.

Second, the proposition is at odds with the principles of law set forth in the Restatement Second of Contracts. As discussed earlier, one of the consequences of a repudiation is that it may discharge the other party's duties to

render performance. (Rest.2d Contracts, § 253, subd. (2), p. 286.) In other words, "one party's repudiation discharges any remaining duties of performance of the other party with respect to the expected exchange." (*Id.*, com. b, p. 287.)

■ Third, the proposition is not consistent with the general rule that a party must mitigate the damages caused by another's wrongful act. (See 23 Williston on Contracts, *supra*, § 63:31, pp. 548–550.) That general rule of damages "necessarily involves the conclusion that failure of the injured party to continue performance is excused, since to hold that the injured party must proceed with performance and yet be denied compensation for so doing is neither conceivable, nor do the courts so hold." (*Id.* at p. 548.)

Accordingly, we conclude that the existence of executory covenants that CVG Hospital did not perform before treating the purported repudiation as an anticipatory breach does not bar CVG Hospital from pursuing a damages claim based on an anticipatory breach.

## IV. *Election to Terminate the Letter of Intent*

Smith and Affiliates also contend that CVG Hospital lost its anticipatory breach claim because it expressly elected to terminate the letter of intent by issuing a termination notice prior to the interim closing. Smith and Affiliates argue that the referee found CVG Hospital terminated the letter of intent pursuant to its specific termination provision and "held prior to that termination CVG [Hospital] had never made the required election to terminate the agreement *because of* any alleged anticipatory breaches." In Smith and Affiliates' view, this lack of causal connection between the purported repudiation and the termination is an independent reason for affirming the referee's ruling.

The second revised statement of decision states that "[t]he only way for CVG [Hospital] to have required S&A to perform was, as stated in *Taylor*, supra, to have treated S&A's suspected inability to perform as an anticipatory breach and to have immediately sought damages for breach of contract, which would have terminated the contractual relation between CVG [Hospital] and S&A. Having chosen not to do so, CVG [Hospital] was left with its remedies, if any, invocable at the time of performance . . . ." Because CVG Hospital delivered a termination notice before the time for performance, the referee concluded, the time for Smith and Affiliates to perform never arrived. Consequently, CVG Hospital was prevented from showing Smith and Affiliates breached the letter of intent by nonperformance.

Based on our review of the statement of decision, it is clear that the referee determined CVG Hospital lost the right to treat the alleged repudiation as a

breach before it delivered the termination notice to Smith and Affiliates.[11] This determination was based on an erroneous view of the law. Furthermore, the determination lacks sufficient evidentiary support to separate it from the legal error. In particular, the evidence does not support a finding that the alleged repudiation was nullified before CVG Hospital delivered the termination notice. Because the alleged repudiation had not been nullified, the termination notice could have been the act by which CVG Hospital "materially change[d its] position in reliance on the repudiation or indicate[d] to the other party that [it] consider[ed] the repudiation to be final." (Rest.2d Contracts, § 256, subd. (2), p. 293.)

The comments and illustrations in the Restatement Second of Contracts demonstrate how the cancellation or termination of a contract by the injured party may operate to make the repudiation final. Comment c explains that "[c]ancellation of the contract or the commencement of an action claiming damages for total breach would be sufficient" to indicate to the repudiating party that the injured party considers the repudiation final. (Rest.2d Contracts, § 256, com. c, pp. 294–295.)

Illustration 4 in the Restatement Second of Contracts applies this principle to the following fact pattern. On February 1, A enters a one-year contract to supply B with natural gas beginning on May 1. On March 1, A repudiates the contract. On March 15, B notifies A that he cancels the contract. Based on these facts, the illustration concludes that "B's duties under the contract are discharged and B has a claim against A for damages for total breach (§ 253)." (Rest.2d Contracts, § 256, com. c, illus. 4, pp. 294–295.)

In summary, the referee's conclusions regarding the legal consequences that resulted from CVG Hospital delivering the termination notice are predicated on legal error. The referee's application of the erroneous principle that an injured party must sue immediately or lose the right to treat a repudiation as an anticipatory breach necessarily precluded the referee from

---

[11] Our conclusion is based in part on the following sentence from the second revised statement of decision: ". . . CVG [Hospital] terminated the [letter of intent] by Ex. 59, not because of the anticipatory breaches outlined, *which were either stale, waived or premature*, but according to an internal mechanism set forth [in] Sec. 1(a) which ended the [letter of intent]." (Italics added.)

A footnote in Smith and Affiliates' brief suggests the referee impliedly found that the claimed anticipatory breaches were simply a pretext for CVG Hospital to avoid completing the transaction. The above quoted sentence plainly identified why the referee determined CVG Hospital's termination was not caused by the purported repudiations—those grounds for termination "were either stale, waived or premature." Thus, we reject such an implied finding because of what the referee actually said. Furthermore, Smith and Affiliates have not demonstrated that the conditions necessary for an implied finding exists. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co., supra*, 121 Cal.App.4th at pp. 461–466 [doctrine of implied findings applied to referee's statement of decision].)

considering whether the delivery of the termination notice (1) materially changed CVG Hospital's position in reliance on the repudiation or (2) indicated to Smith and Affiliates that CVG Hospital considered the repudiation final. (Rest.2d Contracts, § 256, subd. (2).) Therefore, we must reject Smith and Affiliates' contention that the second revised statement of decision can be upheld on the ground that CVG Hospital never elected to terminate the agreement *because* of any alleged repudiation.

### V. Grounds for the Injunction Pertaining to Confidential Information

#### A. Contentions of the Parties

Hospital Group contends the May 31, 2006, injunction should be dissolved because no underlying cause of action was established.

Smith and Affiliates directly dispute that they lost every cause of action by contending that they "prevailed on the second cause of action for threatened misappropriation of trade secrets."

Hospital Group replies to Smith and Affiliates' argument as follows. First, California is not among the jurisdictions that provide relief for *threatened* misappropriation of trade secrets. Second, assuming a cause of action for threatened misappropriation of trade secrets exists, Smith and Affiliates did not plead such a claim. Third, the referee made no finding that Hospital Group threatened to misappropriate any trade secrets of Smith and Affiliates. Fourth, the findings the referee did make are insufficient to support the broad scope of the injunction entered.

#### B. Threatened Misappropriation As a Basis for an Injunction

##### 1. Statutory provision

The California Legislature adopted a version of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.) in 1984, and it became operative on January 1, 1985. (Stats. 1984, ch. 1724, § 1, p. 6252; Civ. Code, § 3426.10 [operative date of act]; *ITT Telecom Products Corp. v. Dooley* (1989) 214 Cal.App.3d 307, 321, fn. 11 [262 Cal.Rptr. 773].)

Civil Code section 3426.2, subdivision (a) provides: "Actual or threatened misappropriation may be enjoined." Based on the unambiguous words of the statute, we reject Hospital Group's argument that California law does not permit injunctive relief to be based on threatened misappropriation of trade secrets.

It is well established that the plain and ordinary meaning of the word "or" is "to mark an alternative such as 'either this or that' [citations]." (*Houge v. Ford* (1955) 44 Cal.2d 706, 712 [285 P.2d 257].) Therefore, the use of the word "or" in Civil Code section 3426.2, subdivision (a) plainly means that an injunction may be based either on actual misappropriation or on threatened misappropriation. (See *Fiorentino v. City of Fresno* (2007) 150 Cal.App.4th 596, 603 [59 Cal.Rptr.3d 30] ["or" used in statute to designate alternatives].)

Accordingly, Civil Code section 3426.2, subdivision (a) "explicitly provides for two types of misappropriations—actual and threatened." (*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.* (S.D.Fla. 2001) 148 F.Supp.2d 1326, 1335 [court did not decide whether California or Florida law applied because each state's version of the Uniform Trade Secrets Act contained the same language].)

### 2. *Inevitable disclosure doctrine*

The inevitable disclosure doctrine allows "a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets. Under that doctrine, the employee may be enjoined by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1446 [125 Cal.Rptr.2d 277].)

Hospital Group contends that the express rejection of the inevitable disclosure doctrine by the court in *Whyte v. Schlage Lock Co., supra*, 101 Cal.App.4th at page 1463, means that an injunction may not be based on threatened misappropriation. We disagree.

First, this contention is inconsistent with the plain meaning of the words used in Civil Code section 3426.2, subdivision (a). The wording of that provision permits injunctions against threatened misappropriation.

Second, the court in *Whyte* explicitly discussed whether Mr. Whyte had engaged in actual or threatened misappropriation before it discussed the inevitable discovery doctrine. It concluded "the evidence established Whyte did not threaten to or actually misappropriate Schlage's trade secrets." (*Whyte v. Schlage Lock Co., supra*, 101 Cal.App.4th at p. 1458.) When it considered and rejected the inevitable disclosure doctrine, the court treated it "[a]s an alternative to proof of actual or threatened misappropriation . . . ." (*Ibid.*) Therefore, the court did not equate its rejection of the inevitable disclosure doctrine with a rejection of threatened misappropriation as a basis

for granting an injunction protecting trade secrets. (See *Del Monte Fresh Produce Co. v. Dole Food Co., Inc., supra*, 148 F.Supp.2d at p. 1335 [some courts apply the inevitable disclosure doctrine "to situations where there has been no actual or threatened misappropriation"].) Consequently, we do not equate the rejection of the inevitable disclosure doctrine with a rejection of the principle that threatened misappropriation may be enjoined.

We recognize that the inevitable disclosure doctrine is not conceptualized by all courts as an alternative to actual or threatened misappropriation. Some courts view the inevitable disclosure doctrine as a specific kind of threatened misappropriation. (E.g., *Interbake Foods, L.L.C. v. Tomasiello* (N.D.Iowa 2006) 461 F.Supp.2d 943.) In that case, Chief District Court Judge Bennett concluded "that the inevitable disclosure doctrine is just one way of showing a threatened disclosure in cases where additional evidence showing the existence of a substantial threat of impending injury is unavailable to the movant." (*Id.* at p. 973.)

If the inevitable disclosure doctrine is regarded merely as one way of showing a threatened misappropriation, it does not follow logically that the rejection of the doctrine means all ways of establishing threatened misappropriation have been rejected. Thus, regardless of the conceptual basis of the doctrine, our conclusion remains the same—the principle that threatened misappropriation of trade secrets may be enjoined is the law of California despite the rejection of the inevitable disclosure doctrine by California courts.

C. *Injunction Entered Was Not Based on Threatened Misappropriation*

1. *Pleadings*

Hospital Group contends that Smith and Affiliates did not plead threatened misappropriation as a basis for the issuance of injunctive relief.

The first cause of action in Smith and Affiliates' cross-complaint concerns unlawful business practices under Business and Professions Code section 17200 et seq. The second cause of action is titled "Misappropriation of Trade Secrets." The allegations that constitute these causes of action do not mention *threatened* misuse, disclosure, or other type of misappropriation of trade secrets. Similarly, the prayer for relief in the cross-complaint includes no reference to *threatened* misappropriation.

We will not, however, decide the fate of the May 31, 2006, injunction based on the failure to explicitly plead threatened misappropriation. The description of the contents of Smith and Affiliates' pleadings is provided as background for our discussion of the statement of decision filed by the referee.

### 2. *Statement of decision*

Hospital Group asserts that the second revised statement of decision did not mention threatened misappropriation or indicate that threatened misappropriation was the basis for the injunction. Our review of the second revised statement of decision shows that Hospital Group's assertion is correct— threatened misappropriation is not mentioned.

Smith and Affiliates contend that the following findings and conclusions set forth in the second revised statement of decision are sufficient to support the issuance of the injunction.

"Cross-Complainants have established by a preponderance of the evidence that they placed trust in the integrity of CVG [Hospital], and its agents, to treat the trade secrets and proprietary information of Cross-Complainants, including their sensitive patient records, with the utmost confidentiality as required by the [letter of intent] (Ex. 1, Par. 18), and not to employ that information for their own benefit, individually or collectively, against Cross-Complainants. [¶] . . . [¶]

"Cross-Complainants are the prevailing parties on the Cross-Complaint. [¶] . . . [¶]

"An injunction shall issue prohibiting Cross-Defendants, and each of them, from using the patient records, trade secrets and/or proprietary information obtained from Cross-Complainants, pursuant to the [letter of intent], in any manner whatsoever against the interests of Cross-Complainants, except as may be otherwise provided by law. Further, said injunction shall command that Cross-Defendants, and each of them, return to Cross-Complainants all documents and/or information, in any format, including reproductions thereof, obtained by them, or any of them, reflecting patient records, trade secrets and/or proprietary information belonging to Cross-Complainants, within thirty (30) days of the service of said injunction on counsel for said Cross-Defendants."

■ The injunction filed by the superior court on May 31, 2006, closely follows the language in the final paragraph of the foregoing quote. For purposes of this opinion, we will refer to the first sentence of that paragraph,

which prohibits use of confidential information, as the prohibitory part of the injunction. (See 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 276, p. 219 [prohibitory injunctions prevent an act].) The last sentence of that paragraph, which requires Hospital Group to return materials, will be referred to as the mandatory part of the injunction. (*Ibid.* [mandatory injunctions compel acts].)

### 3. *Deficiencies in the statement of decision*

Applying the principles of appellate review discussed in part I.B., *ante*, we consider whether the referee's second revised statement of decision contains findings of fact sufficient to support threatened misappropriation as the basis for the injunction.

First, the second revised statement of decision did not include a finding that Hospital Group threatened to misappropriate trade secrets or that Hospital Group posed a threat of misappropriation. If the existence of such a threat or the posing of such a threat were regarded as ultimate facts *and* the statement of decision included such findings, then it would have fairly disclosed "the factual and legal basis for its decision." (Code Civ. Proc., § 632.)

Second and alternatively, we address whether other, more particular facts found by the referee might be sufficient to establish the essential elements of a claim for threatened misappropriation. We address this alternative because the line of demarcation between ultimate facts and evidentiary facts is less than clear. (See 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 339, p. 437.)

One variation of this alternative is that a claim for threatened misappropriation is established by the following essential facts: (1) trade secrets (2) remain in the possession of a defendant (3) who actually has misused or disclosed some of those trade secrets in the past. (*ReadyLink Healthcare v. Cotton* (2005) 126 Cal.App.4th 1006, 1011, 1017 [24 Cal.Rptr.3d 720] [employee improperly acquired trade secrets and then used those secrets when he went to work for competitor; even though he no longer worked for competitor at time the injunction was issued, court concluded "there remained an imminent threat of him using the trade secret information to solicit ReadyLink's employees and customers"].) This variation of threatened misappropriation—actual possession by someone who misused the information in the past—is sufficient to establish the requisite threat of misuse or disclosure in the future as to justify injunctive relief.

There is no finding that Hospital Group actually misused or disclosed any confidential information in its possession. To the contrary, the referee explicitly found that Smith and Affiliates failed to prove by a preponderance of the evidence that Hospital Group had improperly used or disclosed the confidential information that came into its possession under the letter of intent.

Another variant of the essential elements of a claim for threatened misappropriation consists of the following facts: (1) trade secrets (2) are held by a defendant (3) who intends to improperly use or disclose some of those trade secrets. (*Technical Industries, Inc. v. Banks* (W.D.La. 2006) 419 F.Supp.2d 903, 913 [former employee testified he intended to come up with same pipe inspection data by using different computer code and same data collection method; because employer's pipe inspection process was a trade secret, employer showed former employee engaged in threatened misappropriation]; *Teradyne, Inc. v. Clear Communications Corp.* (N.D.Ill. 1989) 707 F.Supp. 353, 355–356 [employer states a claim for threatened misappropriation where it alleges " 'that the ex-employee actually intends to divulge the secrets' "].)

In this case, the referee made no finding that Hospital Group intended to use or disclose confidential information of Smith and Affiliates.

A third variant of the essential elements of a claim for threatened misappropriation was raised by counsel for Smith and Affiliates for the first time at oral argument. Counsel argued that a claim for threatened misappropriation is established when a defendant possesses trade secrets and wrongly refuses to return the trade secrets after a demand for their return has been made. We will assume for purposes of argument that these facts would establish a claim of threatened misappropriation.

In this case, the referee made no explicit finding that Hospital Group *wrongfully* refused to return confidential materials to Smith and Affiliates.

The last variant we consider is whether a claim for threatened misappropriation is established when a plaintiff merely shows a defendant is in possession of trade secrets. We conclude that the issuance of an injunction based on a claim of threatened misappropriation requires a greater showing than mere possession by a defendant of trade secrets where the defendant acquired the trade secret by proper means. (Civ. Code, § 3426.1, subd. (b)(1) [misappropriation includes acquisition of a trade secret by improper means]; *Del Monte Fresh Produce Co. v. Dole Food Co., Inc., supra,* 148 F.Supp.2d at

p. 1335 [interpreting both California's and Florida's versions of the Uniform Trade Secrets Act to require more than mere possession of a trade secret by a defendant; injunction will issue only where there is substantial threat of impending injury].)

Based on our consideration of four possible variations for establishing a claim of threatened misappropriation, we conclude that the referee's second revised statement of decision does not set forth facts sufficient to support a claim for threatened misappropriation.

Furthermore, Hospital Group's objections to the statement of decision and to the proposed injunction brought this deficiency to the referee's attention and the deficiency was not addressed.[12] We note that Smith and Affiliates have not argued that any deficiencies in the explicit findings of fact should be remedied by application of the doctrine of implied findings. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.*, *supra*, 121 Cal.App.4th at pp. 461–466 [doctrine of implied findings applied to referee's statement of decision].) No doubt Smith and Affiliates rejected this argument because it plainly lacks merit in the circumstances of this case. The doctrine is not applicable where the deficiencies in the statement of decision are brought to the referee's attention. (*Id.* at p. 463 [procedures for challenging statement of decision rendered by referee].) As stated earlier, Hospital Group's objections brought the deficiencies to the referee's attention before the second revised statement of decision was filed with the superior court. Therefore, we conclude the doctrine of implied findings cannot be applied to support the theory that the May 31, 2006, injunction was based on threatened misappropriation.

In summary, Smith and Affiliates cannot rely on either *actual* misappropriation of trade secrets or *threatened* misappropriation as the legal grounds for enjoining Hospital Group from using trade secrets obtained from Smith and Affiliates pursuant to the letter of intent.[13] First, the second revised

---

[12] At least it was not addressed by the referee prior to filing the second revised statement of decision with the superior court on December 12, 2005. It appears the referee attempted to narrow the injunction to comport with the explicit findings of the second revised statement of decision by filing an injunction with the superior court on February 6, 2006, but the superior court determined that the referee had lost jurisdiction by that point.

[13] This is not to say that CVG Hospital lacks a continuing obligation to avoid using or disclosing trade secrets. The letter of intent may well impose a continuing contractual obligation on CVG Hospital, as was stated in the referee's invalid injunction filed on February 6, 2006. In any event, this opinion should not be construed to foreclose a subsequent claim by Smith and Affiliates that CVG Hospital breached an ongoing duty under the letter of intent.

statement of decision contains express findings of fact that negate a claim of actual misappropriation. Second, it fails to contain express findings of ultimate fact necessary to support a claim of threatened misappropriation. Accordingly, if all or a part of the injunction is to stand, it must be based on other grounds.

### D. *Civil Code Section 3426.2, Subdivision (c)*

In addition to stating that actual or threatened misappropriation may be enjoined, Civil Code section 3426.2 also provides: "(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

Smith and Affiliates contend that this statutory language provides a basis for the injunctive relief granted in this case. This contention presents an issue of statutory construction.

■ First, the language in Civil Code section 3426.2, subdivision (c) should not be construed so broadly that it swallows up subdivision (a) and renders it superfluous. Therefore, we conclude that subdivision (c) does not authorize a court to enjoin misappropriation where the potential misappropriation is too remote to qualify as "threatened misappropriation" under subdivision (a). (See *People v. Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585] [statutory construction that renders terms superfluous or meaningless are avoided]; *California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 383 [119 Cal.Rptr.2d 642] [rejecting statutory construction that negated a paragraph in the statute].) In other words, a remote threat of misuse or disclosure is not an "appropriate circumstance[]" that justifies enjoining the possible misuse or disclosure.

■ Second, subdivision (c) of Civil Code section 3426.2 authorizes only injunctions that compel "affirmative acts." The comment to Uniform Trade Secrets Act section 2 describes subdivision (c) of Civil Code section 3426.2 as follows: "Section 2(c) authorizes mandatory injunctions requiring that a misappropriator return the fruits of misappropriation to an aggrieved person, *e.g.*, the return of stolen blueprints or the surrender of surreptitious photographs or recordings." (14 West's U. Laws Ann. (2005) U. Trade Secrets Act, com. to § 2, p. 621.) An order enjoining a remote threat of misuse or disclosure is prohibitory and does not necessarily compel affirmative acts. Thus, such an injunction is not authorized by subdivision (c) of section 3426.2.

Third, we consider whether that subdivision provides a legal basis for some or all of the provisions in the injunction entered.

We conclude that the portion of the injunction that required Hospital Group to return materials that contained trade secrets required an "affirmative act" for purposes of Civil Code section 3426.2, subdivision (c). We also conclude that the circumstances of this case might constitute "appropriate circumstances" within the meaning of section 3426.2, subdivision (c) for purposes of ordering the affirmative act of the return of materials that contained trade secrets.

In particular, the second revised statement of decision includes findings that (1) Smith and Affiliates placed trust in CVG Hospital to treat trade secrets and proprietary information with the utmost confidentiality as required by the letter of intent, (2) CVG Hospital accepted the special confidence created, (3) section 18 of the letter of intent requires CVG Hospital to return confidential information in the event that negotiations were not pursued, and (4) hostilities arose between the parties and negotiations were not pursued. These findings of fact would be sufficient to establish the existence of appropriate circumstances justifying an injunction requiring Hospital Group to return confidential information to Smith and Affiliates.

Therefore, we conclude that the portion of the injunction that required Hospital Group to return materials is consistent with the terms of Civil Code section 3426.2, subdivision (c) and could be upheld on that ground had that ground been adequately disclosed in the second revised statement of decision.

In contrast, we conclude that the provision of the injunction filed May 31, 2006, that prohibited Hospital Group from using the patient records, trade secrets and proprietary information obtained from Smith and Affiliates pursuant to the letter of intent was not authorized under Civil Code section 3426.2, subdivision (c).

E.–G.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

H. *Relief and Remand*

In summary, the second revised statement of decision does not set forth adequate grounds for the prohibitory part of the injunction.[14] Therefore, that

---

*See footnote, *ante*, page 501.

[14] The prohibitory part states that Hospital Group is prohibited "from using the patient records, trade secrets and/or proprietary information obtained" from Smith and Affiliates pursuant to the letter of intent. (See 6 Witkin, Cal. Procedure, *supra*, § 276, p. 219 [prohibitory injunctions prevent an act].)

part of the injunction cannot be upheld under the second revised statement of decision as written.

The second revised statement of decision contains specific findings of fact that could amount to "appropriate circumstances" under Civil Code section 3426.2, subdivision (c) and, as a result, justify the issuance of the mandatory part of the injunction, which requires the return of materials. The second revised statement of decision, however, is ambiguous as to the legal basis for the mandatory part of the injunction because it does not contain an express finding of "appropriate circumstances" or identify the legal basis for the mandatory part of the injunction.[15]

Consequently, both the prohibitory part and mandatory part of the injunction will be vacated and the matter remanded for further proceedings. On remand, the superior court shall refer the matter to the referee to clarify the statement of decision regarding the injunction. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2007) ¶ 6:229, p. 6-62 [effect of incomplete statement: "appellate court may simply instruct the trial court to refer the matter back to the referee to complete his or her report and resubmit it to the court"].)

VI., VII.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment and the May 31, 2006, injunction are reversed and the superior court is directed to vacate its May 23, 2006, order insofar as it concerns the injunction.[17] The matter is remanded for further proceedings not inconsistent with this opinion. In particular, the superior court shall refer the matter to the referee to (1) apply the correct rules of law concerning repudiation, nullification, and anticipatory breach, and (2) clarify the factual

---

[15] Nor do Smith and Affiliates' responses to CVG Hospital's objections to the statement of decision and Hospital Group's objections to the proposed injunction mention Civil Code section 3426.2, subdivision (c) as a basis for the injunction.

[*] See footnote, *ante*, page 501.

[17] This disposition is not intended to render the injunction ineffective immediately after the issuance of remittitur. The superior court shall determine, in its discretion, whether the injunction (1) should remain in effect until a point in the further proceedings, such as after the statement of decision is clarified, (2) should be modified pending the outcome of the further proceedings, or (3) should be dissolved shortly after remand.

and legal basis, if any, for the prohibitory and the mandatory parts of the May 31, 2006, injunction and the conclusion that Smith and Affiliates prevailed on their cross-complaint. Plaintiff and cross-defendants shall recover their costs on appeal.

Gomes, Acting P. J., and Hill, J., concurred.