[Civ. No. 68509. Second Dist., Div. Five. June 14, 1983.]

GRUBB AND ELLIS COMPANY et al.,
Plaintiffs, Cross-defendants and Respondents, v.
DANIEL S. SPENGLER, Defendant, Cross-complainant and Appellant.

## COUNSEL

Daniel S. Spengler, in pro. per., and Dreyer, Shulman, Dubbin, Kraft & Green for Defendant, Cross-complainant and Appellant.

James D'A. Welch for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**FEINERMAN, P. J.**—Defendant, Daniel S. Spengler (Spengler), who appears here in pro. per., purports to appeal from the memorandum of decision and notice of intended judgment. ■ A memorandum of decision is not an appealable order. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 675 [37 Cal. Rptr. 46].) ■ However, we construe the notice of appeal, filed November 26, 1980, as referring to the judgment entered August 4, 1980. (See *Gregory* v. *Hamilton* (1978) 77 Cal.App.3d 213, 215, fn. 1. [142 Cal.Rptr. 563]; *Channell* v. *Anthony* (1976) 58 Cal.App.3d 290, 302 [129 Cal.Rptr. 704].)

Suit was originally filed by Grubb and Ellis Commercial Brokerage Company (Grubb and Ellis) on certain promissory notes executed by Spengler in favor of Grubb and Ellis totaling $9,100, of which Grubb and Ellis claimed $6,574.84 remained due and payable by Spengler, plus interest at the rate of 7 percent per annum. Grubb and Ellis took the position that Spengler had been engaged by them on July 12, 1976, as a real estate salesman under what they termed an "independent contractor agreement" that provided for compensation based solely on commissions to be collected from parties to real estate transactions. Grubb and Ellis claimed that the promissory notes executed by Spengler represented loans made by Grubb and Ellis to Spengler in the form of a monthly

draw against commissions. The promissory notes were payable within six months or upon termination of Spengler's relationship with Grubb and Ellis. Spengler was terminated on July 29, 1977, and the plaintiffs claim the notes became due and payable at that time.

Spengler cross-complained for declaratory relief asserting that under the independent contractor agreement with Grubb and Ellis he was an employee and as such was entitled to an hourly minimum wage and social security benefits. Spengler also claimed moneys were due to him on the theory of quantum meruit, and he sought damages for breach of contract and fraud.

After a court trial, judgment was rendered in favor of Grubb and Ellis on its complaint in the amount of $5,694.42 plus interest from November 30, 1976, to date of judgment and $1,147.25 in attorneys' fees and costs. Judgment was rendered against Spengler on all counts of his cross-complaint.

■ Spengler contends that the fact that Grubb and Ellis failed to serve the proposed findings of fact and conclusions of law and judgment on him, as was then provided for in rule 232 of the California Rules of Court, is grounds for reversal on appeal.[1]

The trial court filed and served its memorandum of decision and notice of intended judgment on June 9, 1980. Spengler filed his request for findings of fact and conclusions of law on June 16, 1980. A notice to prepare findings was served by the court on June 17, 1980. The proposed findings of fact and conclusions of law and the proposed judgment are dated June 30, 1980, and were signed by the court and filed on August 4, 1980. The record indicates that the proposed findings of fact, conclusions of law and judgment were not served upon Spengler. Rule 232(c) provided at the time here pertinent that, "If the proposed findings, conclusions and judgment are not served and submitted within such time [15 days after service of a notice to prepare findings], or any additional time granted by the court as provided by subdivision (i),[2] any other party who appeared at the trial may: (1) prepare, serve and submit to the court his proposed findings, conclusions and judgment, or (2) serve on all other par-

[1]At the time of the trial in this case, Code of Civil Procedure section 632 required the trial court to render findings of fact and conclusions of law upon request of a party, and rule 232, California Rules of Court, specified the procedures and time limits for requesting and submitting proposed findings, making objections and counterfindings, etc. In 1981, Code of Civil Procedure section 632 was amended to delete the requirement of findings, and rule 232, California Rules of Court, was amended to reflect the changes in Code of Civil Procedure section 632.

[2]Subdivision (i) of rule 232 provided "The court may, by written order, extend any of the times prescribed herein and at any time prior to the entry of judgment, whether or not a signed judgment is filed, it may, for good cause shown and upon such terms as may be just, excuse a noncompliance with the time limits prescribed for doing any act required by this rule."

ties and file a notice of motion for an order that findings and conclusions be deemed waived." The record does not reveal that Spengler took advantage of the remedy provided by subdivision (c) of rule 232 by submitting his own findings when Grubb and Ellis failed to timely serve him with its findings. The record does not reveal that Spengler made any inquiry respecting the findings at any time after his request for findings was filed.

In *Tsarnas* v. *Bailey* (1962) 205 Cal.App.2d 593 [23 Cal.Rptr. 336], the court, in construing former Code of Civil Procedure section 634 which provided for service of proposed findings upon all parties, stated at page 596: "The final contention on appeal is that the judgment is invalid since the findings of fact were not served on the defendant before the signing of the judgment in violation of section 634 of the Code of Civil Procedure. However, both the cases decided before and after the 1959 amendment to this section have uniformly held that failure to serve the findings is a mere irregularity and not grounds for reversal [citations]." (See *Ball* v. *City Council* (1967) 252 Cal.App.2d 136 at pp. 146-147 [60 Cal.Rptr. 139].) The same reasoning is applicable with respect to the requirements of service of proposed findings contained in rule 232 of the California Rules of Court at the time here pertinent. (See *Estate of Cooper* (1970) 11 Cal.App.3d 1114, 1121-1122 [90 Cal.Rptr. 283].) Spengler has made no showing of prejudice as a result of the failure to serve proposed findings and judgment upon him. He has not demonstrated cause for reversal of the judgment on this ground.

In its findings of fact, the trial court found that Spengler executed various promissory notes while a real estate salesperson for Grubb and Ellis, and that, pursuant to stipulation of the parties, the amount outstanding on the notes was $5,694.42 with interest at the rate of 7 percent (7%) from November 30, 1976, to date of judgment. The trial court found that the relationship between Spengler and Grubb and Ellis was governed by the written independent contractor agreement, that Spengler's service with Grubb and Ellis was terminated in accordance with the agreement, and that Grubb and Ellis had not breached the agreement.

In its conclusions of law, the trial court stated, "Defendant DANIEL S. SPENGLER at all times material to the above-entitled case, was not an employee of the Plaintiff, but rather an independent contractor and therefore, was not entitled to a minimum wage," and "was not subject to the Social Security System . . . and was entitled only to compensation based on commissions earned according to the Independent Contractor Agreement. . . ."

Spengler challenges the trial court's finding that he was an independent contractor.

The answer to the question whether the relationship between a real estate broker and his real estate salesperson is one of employer and employee or one of principal and independent contractor depends upon the particular area of law one is examining.

It seems clear that for purposes of the administration of the real estate law, the salesperson is the employee and agent of the broker. (See Bus. & Prof. Code, §§ 10132, 10137, 10151, 10160, 10177, subd. (h); *Grand* v. *Griesinger* (1958) 160 Cal.App.2d 397, 404-406 [325 P.2d 475].)

For purposes of establishing tort liability, the California courts have held that a broker is liable under the doctrine of respondeat superior for the tortious acts of his salespeople during the course and scope of business because a salesperson is the agent of the broker. Thus, in *Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, at pages 206-207 [30 Cal.Rptr. 253], the court stated: "We are satisfied, accordingly, that while it may be a question of fact whether in each case a real estate salesman is an employee within the common law definition of master and servant, the Legislature has, by virtue of statutory enactment, made such a salesman an agent of the broker as a matter of law. A consideration of the several statutory provisions applicable to a real estate salesman impels the conclusion that such person can act only for, on behalf of, and in place of the broker under whom he is licensed, and that his acts are limited to those which he does and performs as an agent for such broker. [Citation.] We conclude, therefore, that a salesman, insofar as his relationship with the broker who employs him is concerned, cannot be classed as an independent contractor. Accordingly, any contract which purports to change that relationship from that of agent to independent contractor is invalid as being contrary to the provisions of the Real Estate Law. [Citation.]"

The status of a real estate salesman for purposes of workers' compensation insurance is less clear. In two early cases, prior to the enactment of the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.), the courts found that an employer-employee relationship existed. In so concluding, the courts reviewed the circumstances surrounding the work relationship, considering the amount of control the broker exerted over his salesmen and weighing such factors as the method of compensation, who paid the salesman's expenses, how much time the salesman devoted to his work, and how much control the broker exerted over the salesman's movement and method of selling.

*Payne* v. *White House Properties, Inc.* (1980) 112 Cal.App.3d 465 [169 Cal.Rptr. 373], considered the same question, but after the enactment of Business and Professions Code section 10177, subdivision (h), which provides that the commissioner may suspend or revoke the license of a broker who has failed to exercise reasonable supervision over the activities of his salesmen. The

court examined the question: " . . . whether or not the real estate broker is now required to exert that degree of supervision and control over real estate salespersons so that salespersons are employees for the purpose of worker's compensation as a matter of law." (112 Cal.App.3d at p. 470.) The court concluded that, 'In most instances the real estate salesperson would be an employee for the purposes of worker's compensation, but that determination remains a question of fact." (112 Cal.App.3d at p. 471.)[3]

In a related case, *Resnik* v. *Anderson & Miles* (1980) 109 Cal.App.3d 569 [167 Cal.Rptr. 340], a real estate salesperson filed a claim with the California Labor Commission for commissions which he claimed his broker owed to him. The appellate court considered the question of whether the Labor Commissioner had jurisdiction over the salesperson's claim, his jurisdiction being limited to *employee* claims. (Lab. Code, §§ 96, 98, subd. (a).) The court concluded that the salesperson was an agent-employee as a matter of law. (109 Cal.App.3d at pp. 572-573.)

In 1953 the issue of whether a real estate salesperson was an employee for purposes of unemployment insurance was clearly settled by the enactment of section 650 of the Unemployment Insurance Code. It provides in pertinent part, " 'Employment' does not include services performed as a real estate . . . broker or as a real estate . . . salesman by an individual who is licensed in one of such classes by the state and who is remunerated solely by way of commission." Hence, for purposes of the unemployment insurance law a real estate salesperson who is compensated solely on a commission basis, as was Spengler in the case before us, is *not* an employee.

The status of real estate salespersons for purposes of federal employment taxes has been settled by the recent enactment of Internal Revenue Code section 3508 (26 U.S.C.A. § 3508, Pub.L. No. 97-248, 96 Stat. 551). That section provides in pertinent part, "(a) General Rule.—For purposes of this title, in the case of services performed as a qualified real estate agent . . . —(1) the individual performing such services shall not be treated as an employee, and (2) the person for whom such services are performed shall not be treated as an employer."[4]

---

[3]In *Payne* v. *White House Properties Inc.*, *supra*, 112 Cal.App.3d 465, 472, the court concluded that there was sufficient evidence to sustain the conclusion that the salesman was not an employee for purposes of worker's compensation insurance.

[4]The term "qualified real estate agent" is defined in Internal Revenue Code section 3508, subdivision (b)(1) as "any individual who is a sales person if [¶] (A) such individual is a licensed real estate agent, [¶] (B) substantially all of the remuneration (whether or not paid in cash) for the services performed by such individual as a real estate agent is directly related to sales or other output (including the performance of services) rather than to the number of hours worked, and [¶] (C) the services performed by the individual are performed pursuant to a written contract

At the time pertinent in this case, the Internal Revenue Code and the applicable Treasury regulations embodied the usual common law rule for determining the existence of the relationship of employer and employee based generally on the amount of control exercised by the employer over the employee. (26 C.F.R. § 31.3121(d)-1(c), § 31.3401(c)-1.) In two reported cases in which the Internal Revenue Service has attempted to enforce the provisions of the Internal Revenue Code relating to social security and income tax withholding against the earnings of real estate salesmen, the federal court held, in each case, that the salesmen were not employees for such purposes. (See *Dimmitt-Rickhoff-Bayer Real Estate Co.* v. *Finnegan* (8th Cir. 1950) 179 F.2d 882; *Henry Broderick, Inc.* v. *Squire* (9th Cir. 1947) 163 F.2d 980.)

■ Insofar as our research reveals, no case or statutory enactment has specifically addressed itself to the question whether minimum wage laws are applicable to real estate salesmen. The federal legislation (29 U.S.C.A. § 206) applies only to employees engaged in interstate commerce. (29 U.S.C.A. § 203 (b).) Nothing in the record indicates that Grubb and Ellis was engaged in interstate commerce. In any case, in light of the fact that federal legislation excludes real estate salespersons from the definition of employees for purposes of federal employment taxes, it is unlikely that they would be considered employees for purposes of the minimum wage laws.

The state minimum wage laws specifically exclude outside salesmen from coverage. (Lab. Code, § 1171.) "The apparent reason for specifically providing that this chapter does not apply to individuals employed as outside salesmen is that such employees normally control their own hours and are paid on a commission basis." (*Review of Selected 1972 Legislation* (1973) 4 Pacific L.J. 213, pp. 482-483.) In title 8, California Administrative Code, section 11345, subdivision 2(J), "Outside salesperson" is defined as follows: " 'Outside Salesperson' means any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." Under Labor Code section 1171, there is a distinction between an independent contractor, who is not an employee, and an outside salesperson, who is an employee, but has been specifically excluded from the application of the minimum wage law. In the usual case, a real estate person would probably qualify as a non-employee either under the traditional common law "control" rule or as an outside salesperson as defined in Labor Code section 1171. In both circumstances, the minimum wage laws would not be applicable to real estate salespersons.

---

between such individual and the person for whom the services are performed and such contract provides that the individual will not be treated as an employee with respect to such services for Federal tax purposes."

In the case before us, minimal evidence was offered by Spengler in support of his claim that he was an employee under the traditional common law "control" test. In his first amended complaint, Spengler admitted that he entered into an independent contractor agreement with Grubb and Ellis. The agreement was attached to his cross-complaint and incorporated by reference.[5] The agreement provided in part, "This agreement does not constitute a hiring by either party. It is the parties' intention that, so far as shall be in conformity with law, the Salesperson [Spengler] shall be an independent contractor and not G & E's [Grubb and Ellis'] employee." Bill Puterbaugh, district manager of Grubb and Ellis at the time the company negotiated an agreement with Spengler, testified that Spengler worked for Grubb and Ellis as an independent contractor. The testimony pointed to by Spengler respecting the extent of company supervision was to the following effect: When a person first started with Grubb and Ellis, the company had "regular review sessions" with him. The salesmen also filled out a form called "transactions in progress" on a monthly basis. Mr. Puterbaugh testified, "we reviewed with them how they were doing on the transactions and tried to note[,] counsel and advise them." Mr. Puterbaugh testified that the purpose of the "transactions in progress" form was to provide a reason for the managers to talk to the salesmen "once a month." This evidence is insufficient to establish the kind of control over the manner in which Spengler performed his work that would indicate an employer-employee relationship. (*S. A. Gerrard Co.* v. *Industrial Acc. Com.* (1941) 17 Cal.2d 411, 413-414 [110 P.2d 377]; *Automatic Canteen Co.* v. *State Board of Equalization* (1965) 238 Cal.App.2d 372, 386-387 [47 Cal.Rptr. 848].)

While there may be some doubt as to whether a broker may hire a salesperson on an independent contractor basis (see *Gipson* v. *Davis Realty Co., supra,* 215 Cal.App.2d 190 at p. 207), the evidence presented in this case was clearly sufficient to sustain the trial court's finding that Spengler was not an employee of Grubb and Ellis for the purpose of entitlement to minimum wages.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

---

[5]Matters admitted in pleadings do not require proof. (*People* v. *Bestline Products, Inc.* (1976) 61 Cal.App.3d 879, 921 [132 Cal.Rptr. 767].)