Filed 10/9/13  Andrade v. De La Cerda-Lim CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALIN ANDRADE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GABRIELLA DE LA CERDA-LIM,<br><br>    Defendant and Respondent. | B240160<br><br>(Los Angeles County<br>Super. Ct. No. VC057040) |

        APPEAL from judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge.  Reversed.

        Law Offices of Jonathan C. Stevens and Jonathan C. Stevens for Plaintiff and Appellant.

        Harbin & McCarron and Andrew McCarron for Defendant and Respondent.

                    _____

## INTRODUCTION

Plaintiff and Appellant Alin Andrade appeals from the judgment entered in favor of Defendant and Respondent Gabriella De La Cerda-Lim following the sustaining of Defendant's demurrer to the third amended complaint without leave to amend. Defendant is a licensed real estate broker. Defendant allegedly employed a licensed real estate salesperson, Natalie Tibbs, who also is named as a defendant in this action. Plaintiff seeks to hold Defendant vicariously liable for Tibbs' alleged misconduct in connection with Plaintiff's investment in a real estate "flipping" venture. When Tibbs was hired, Defendant registered the fictitious name "Brookdale Properties" with the Department of Real Estate (DRE), and Defendant and Tibbs conducted business under the fictitious name "Brookdale Properties." In sustaining Defendant's demurrer, the trial court concluded that Defendant could not be held vicariously liable for Tibbs' alleged misconduct after Defendant notified the DRE that she had terminated her affiliation with Brookdale Properties. Because we hold that Defendant's cancellation of a fictitious business name does not establish, as a matter of law, that Defendant severed her alleged employment relationship with Tibbs, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The operative third amended complaint alleges that, in May 2007, Plaintiff began attending investment presentations delivered by Natalie Tibbs at the offices of Brookdale Properties. At these presentations, Tibbs allegedly pitched a fraudulent real estate investment "scheme" whereby Brookdale Properties would use funds invested by Plaintiff to acquire, rehabilitate and "flip" residential properties for a quick profit.

Tibbs is a licensed real estate salesperson. In January 2007, Defendant, a licensed real estate broker, allegedly became Tibbs' employing and supervising broker. At the time, Defendant held her broker license under the fictitious business name "Brookdale Properties."

The complaint alleges that Brookdale Properties is not, nor has it ever been, a corporation registered or incorporated in California. Rather, Defendant and Tibbs, together with other defendants named in the complaint, allegedly conducted business under the fictitious name "Brookdale Properties."

At private meetings in May and June of 2007, Tibbs and Plaintiff began discussing the details and structure of the real estate investment transaction at the heart of Plaintiff's lawsuit. The proposed transaction required Plaintiff to invest a total of $60,000 for the purchase and renovation of two residential properties located in Whittier, California. Within 30 days of purchase, the properties were to undergo specific improvements to increase their marketability and, thereafter, would be re-listed at slightly below market value to ensure a swift sale. Tibbs allegedly promised that the investment would return a $10,000 profit for each property after the properties were resold. If the properties could not be acquired, Tibbs represented that Plaintiff would receive a full refund of her $60,000 investment. Defendant was allegedly present for at least one of these meetings and was aware of the investment scheme and related representations made by Tibbs. In the latter half of June 2007, Tibbs drafted two written proposals and accompanying agreements (one for each of the subject properties) that included terms consistent with Tibbs' representations regarding Plaintiff's share of the profits and the full refund of Plaintiff's investment in the event the properties could not be acquired.

On July 1, 2007, Defendant allegedly "terminated her affiliation as broker for Brookdale Properties with the DRE." The complaint alleges that "[Defendant] did not notify Plaintiff that Ms. Tibbs would require another employing and supervising broker in order to continue services as a real estate agent, nor did [Defendant] seek [to] notify the DRE or require Natalie Tibbs to obtain another broker for Brookdale Properties to supervise the pending transaction with Plaintiff." Rather than "more actively supervise the discussions, representations and transaction," Defendant allegedly "decided to ignore her supervisory duties and abandon her duties to her principal, Plaintiff."

3

On July 9, 2007, Plaintiff executed the real estate investment proposals and accompanying agreements that Tibbs drafted. As discussed, the terms and conditions of the agreements stated that, upon acceptance of Plaintiff's investment, Plaintiff would "receive [an] interest in the sale of [each] property" amounting to a $10,000 "return for your investment" "[d]ue on [the] close of Escrow, for the sale of the listed property." The agreements also stated that in the event the properties could not be acquired, Plaintiff's investment would be returned "in full." The agreements were signed by Tibbs as "Owner/Brookdale Properties."

Upon receiving Plaintiff's $60,000 investment, Tibbs deposited the funds into the Brookdale Properties Escrow Account. Defendant allegedly maintained the Brookdale Properties Escrow Account as the sponsoring broker and authorized Tibbs to make deposits into and disbursements from the account. Tibbs allegedly continued to make disbursements from the account through, at least, August 2007.

Neither property was acquired. Despite Plaintiff's demand for a refund of her investment, Defendant and Tibbs allegedly "refused to return Plaintiff's money from the escrow account."

In her third amended complaint, Plaintiff asserted the following five causes of action against Defendant: (1) Securities Violation for violation of Corporations Code section 25401; (2) Fraud/Deceit; (3) Breach of Contract; (4) Conspiracy; and (5) Money Due and Owing. With the exception of the money due and owing count, Plaintiff did not charge Defendant with direct liability, but instead asserted that Defendant was vicariously liable for Tibbs' conduct as Tibbs' employing and supervising broker. As for the money due and owing count, Plaintiff asserted that Defendant took possession of Plaintiff's $60,000 investment when it was deposited in the Brookdale Properties Escrow Account, which Defendant controlled as the sponsoring broker.

In her demurrer to the third amended complaint, Defendant challenged Plaintiff's vicarious liability theory on three grounds. First, Defendant argued that Plaintiff had no standing to sue her for Tibbs' alleged conduct because "as broker of record of Brookdale Properties, a corporate broker," Defendant owed her duty to supervise Tibbs to Brookdale

4

Properties, not Plaintiff. Second, Defendant maintained that she could not be held vicariously liable for Tibbs' conduct because Plaintiff had admitted that Defendant "left Brookdale Properties" before the real estate investment transaction occurred. Third, Defendant argued that even if Tibbs' alleged fraudulent conduct had occurred while Defendant was the "Broker of Record for Brookdale Properties," she still could not be held vicariously liable because Tibbs' conduct was "outside the course and scope [of Tibbs' employment] as it was not related to the purchase or sale of property, but rather was an investment to 'flip' real property." Similarly, with respect to the money due and owing count, Defendant claimed that liability could not be established because Plaintiff admitted Defendant was "no longer Broker of Record for Brookdale Properties" when Plaintiff delivered her $60,000 investment to Tibbs.

In her opposition to Defendant's demur, Plaintiff argued that Defendant's repeated references to her status as "Broker of Record for Brookdale Properties" were misleading and inapplicable because, as alleged in the complaint, "Brookdale Properties is not, and has never been a corporation, and [Defendant] has never been a corporate broker."[1] Because the complaint alleged that Defendant—not Brookdale Properties—was Tibbs' employing and supervising broker, Plaintiff maintained that she had pled sufficient facts to hold Defendant vicariously liable for Tibbs' conduct. With respect to the money due and owing count, Plaintiff argued that the allegation that Defendant controlled the Brookdale Properties Escrow Account as the sponsoring broker was sufficient to establish that Defendant had obtained possession of Plaintiff's investment funds when Tibbs deposited the funds in the account with Defendant's authorization.

---

[1] With her opposition, Plaintiff filed a request for judicial notice, attaching, among other things, a purported Broker Change Application, signed by Defendant on June 28, 2007 and received by the DRE on July 2, 2007, cancelling the fictitious business name "Brookdale Properties" on Defendant's broker license. The trial court denied Plaintiff's request for judicial notice on the ground that it could not consider extrinsic evidence in ruling on Defendant's demurrer.

5

The trial court sustained Defendant's demurrer without leave to amend. The court's written order stated that Plaintiff's "conclusory allegation that [Defendant] was the licensed broker for Brookdale Properties and the employing broker for TIBBS is unsupported." In that regard, the court found that Plaintiff had "concede[d] that [Defendant] was no longer the licensed broker [for Brookdale Properties] at the time of the sale." The court determined that the duty to supervise Tibbs "did not follow [Defendant] after she left Brookdale Properties." The court also found the allegations that Defendant had control of the Brookdale Properties Escrow Account were "unsupported because it ha[d] been established that [Defendant] was no longer part of BROOKDALE at the time plaintiff paid any money." Additionally, the court determined that Defendant could not be held vicariously liable for Tibbs' conduct because, "[i]f TIBBS was working for Brookdale Properties as alleged, only the company would be liable for its salesperson's wrongful acts."

On February 9, 2012, the trial court entered judgment in favor of Defendant. Plaintiff appealed from the judgment on March 12, 2012. The trial court stayed the action against the remaining defendants pending the outcome of this appeal.

## STANDARD OF REVIEW

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law." (*Lazar v. Hertz Corp*. (1999) 69 Cal.App.4th 1494, 1501.) In doing so, "we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883; *Kruss v. Booth* (2010) 185 Cal.App.4th 699, 713.) We "give the complaint a reasonable interpretation by reading it as a whole and its parts in context." (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007.) The complaint "must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) "[I]t is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 967.) "Based on this

6

standard of review, our inquiry ends and reversal is required once we determine a complaint has stated a cause of action under any legal theory." (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 603.)

## DISCUSSION

In this appeal, we must decide whether the allegations of Plaintiff's complaint are sufficient to hold Defendant vicariously liable for Tibbs' alleged misconduct with respect to the underlying real estate investment transaction. As we shall explain, because Plaintiff alleges that Defendant—not Brookdale Properties—was Tibbs' employing and supervising broker, we conclude that Plaintiff has alleged sufficient facts to impose vicarious liability against Defendant for Tibbs' alleged misconduct. Furthermore, because Plaintiff alleges that Brookdale Properties was merely a fictitious name under which Defendant and Tibbs conducted business, we hold that Plaintiff's purported concession that she "terminated her affiliation as broker for Brookdale Properties" does not preclude a finding that Defendant is vicariously liable for Tibbs' alleged misconduct. Contrary to the trial court's determination, Defendant's duty to supervise Tibbs did not necessarily end when she allegedly "left Brookdale Properties." This is because Defendant's duty of supervision stems from her alleged status as Tibbs' employing broker—not from her affiliation with Brookdale Properties, which was, according to the complaint's allegations, nothing more than a fictitious name under which Defendant and Tibbs conducted business. Accordingly, we reverse the judgment and vacate the order sustaining Defendant's demurrer.

1.      *The Law Regulating the Real Estate Broker-Salesperson Relationship*

We begin with the law pertaining to real estate licensing and the broker-salesperson relationship. Business and Professions Code section 10130 declares it unlawful for any person to act as a real estate broker or a real estate salesperson without first obtaining a license from the DRE. A "real estate broker" is defined as one who does certain enumerated acts (including soliciting the purchase, sale or exchange of securities constituting an investment in real property) for another and for compensation. (Bus. &

7

Prof. Code, §§ 10131, 10131.3; Corp. Code, § 25206.)  A corporation may obtain a real estate broker license if it is qualified by an officer who is a licensed broker.  (Cal. Code Regs., tit. 10, §§ 2740, 2742; Bus. & Prof. Code, §§ 10159, 10211.)  A real estate broker also may do business under a fictitious name, provided he or she obtains a license bearing the fictitious name that is approved by the DRE.  (Cal. Code Regs., tit. 10, § 2731.)

A "real estate sales [person]" is defined as any person who is "employed by a licensed real estate broker" to do any act requiring a broker's license.  (Bus. & Prof. Code, § 10132.)  A salesperson is only licensed to act during employment by and on behalf of a licensed real estate broker.  (*Ibid*.)  A salesperson can neither contract in his or her own name, nor accept compensation from anyone other than the broker under whom the salesperson is licensed and employed.  (Bus. & Prof. Code, § 10137; *Edmonds v. Augustyn* (1987) 193 Cal.App.3d 1056, 1063, fn. 7.)

A real estate broker must have a written, signed and dated agreement with each salesperson the broker employs.  (Cal. Code Regs., tit. 10, § 2726.)  Within five days after a salesperson enters a broker's employ, the broker must provide written notification of the employment to the DRE.  (Cal. Code Regs., tit. 10, § 2752; Bus. & Prof. Code, § 10161.8.)  This notification must be signed by the broker and salesperson and contain, among other things, a certification that the salesperson's license reflects the name of the employing broker.  (Cal. Code Regs., tit. 10, § 2752; Bus. & Prof. Code, § 10161.8, subd. (d).)  The salesperson's license certificate must be held at the broker's main business office until the salesperson leaves the broker's employ.  (Cal. Code Regs., tit. 10, § 2753; Bus. & Prof. Code, § 10160.)  Upon termination of the salesperson's employment, the broker must immediately notify the DRE in writing and return the salesperson's license certificate to the salesperson.  (Bus. & Prof. Code, § 10161.8, subd. (b); Cal. Code Regs., tit. 10, § 2753.)

A broker has a duty to supervise every salesperson the broker employs.  (Cal. Code Regs., tit. 10, § 2725; Bus. & Prof. Code, § 10177, subd. (h).)  The duty to supervise includes establishing policies, rules, procedures, and systems to review, oversee, inspect, and manage every transaction that requires a license, documents that

8

may have a material effect on the rights or obligations of a party to the transaction, and the handling of trust funds, among other things.  (Cal. Code Regs., tit. 10, § 2725.)

In view of this statutory scheme, "[i]t is settled that for purposes of liability to third parties for torts, a real estate salesperson is the agent of the broker who employs him or her.  The broker is liable as a matter of law for all damages caused to third persons by the tortious acts of the salesperson committed within the course and scope of employment."  (*California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1581; *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 895.)

The determination as to whether the salesperson "committed a tort during the course of his employment turns on whether or not: 1) the act performed was either required or 'incident to his duties' [citation], or 2) the employee's misconduct could be reasonably foreseen by the employer in any event [citations].  The employer's liability under the doctrine of respondeat superior extends to malicious acts and other intentional torts of an employee committed within the scope of his employment [citations]."  (*Alhino v. Starr* (1980) 112 Cal.App.3d 158, 173-174.) [2]

2.      *The Complaint's Allegations Are Sufficient to Impose Vicarious Liability*

Liberally construing the complaint's allegations as we must, with all reasonable inferences drawn in favor of the pleadings, we find that Plaintiff has alleged sufficient facts to hold Defendant vicariously liable for Tibbs' alleged misconduct under the foregoing authorities.  Critically, with respect to the question of vicarious liability, the complaint alleges that "Defendant De La Cerda-Lim was a licensed broker doing

---

[2]      Under general agency principles, which apply to the broker-salesperson relationship, a broker also may be liable to a third person " '[i]f the [broker] places the [salesperson] in a position to defraud, and the third person relies upon [the salesperson's] apparent authority to make the representations, . . . even though the [salesperson] is acting for his own purposes. [Citation.]  The theory is that the [salesperson's] position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the [salesperson] appears to be acting in the ordinary course of the business confided to him.  It is immaterial that the [broker] receives no benefits from the transaction.' [Citation.]"  (*Alhino v. Starr*, *supra*, 112 Cal.App.3d at p. 174, italics omitted.)

business as Brookdale Properties, and at times relevant to this action, was the individual employing/supervising broker for sales agent Natalie Tibbs . . . ." The complaint alleges further: "The actions of Natalie Tibbs are attributed to [Defendant] as Natalie Tibbs was [Defendant's] real estate agent and employee under the law. . . . Because real estate agents must have an employing/supervising broker in order to act as an agent for the purpose of real estate investment, Natalie Tibbs could not have performed any of the acts alleged herein without [Defendant] serving as her employing and supervising broker." Because the complaint alleges that Defendant was Tibbs' employing broker, and the underlying real estate investment transaction was within the course and scope of Tibbs' employment, the complaint's allegations are sufficient to hold Defendant vicariously liable for Tibbs' conduct.[3]

With respect to Brookdale Properties, the complaint alleges that Brookdale Properties was not "nor ha[d] [it] ever been, a corporation registered or incorporated in the state of California . . . ." Rather, the complaint alleges, "Brookdale Properties" was "merely [a] fictitious business [name]" and "California Department of Real Estate records indicate that [Defendant] and Natalie Tibbs were [doing business as] Brookdale Properties." In light of these allegations, it is apparent that the trial court misconstrued the complaint's allegations in concluding that "[i]f TIBBS was working for Brookdale Properties as alleged, only the company would be liable for its salesperson's wrongful acts." Indeed, Defendant acknowledges in her respondent's brief that the trial court

---

[3] Defendant argued in her demurrer that Tibbs' alleged conduct was outside the course and scope of Tibbs' employment because it concerned "an investment to 'flip' real property." Defendant "has not raised this issue on appeal, however, and it may therefore be deemed waived." (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.) Nevertheless, having reviewed the complaint, we find that the conduct, as alleged, was within the course and scope of Tibbs' employment. The complaint alleges that Tibbs solicited Plaintiff to purchase an interest in a venture formed for the purpose of securing a profit from the sale of real property. As discussed above, a real estate salesperson must be employed by a licensed broker to sell an investment security of this nature. (Bus. & Prof. Code, §§ 10132, 10131.3; Corp. Code, § 25206.)

10

applied inapposite legal authority in reaching this conclusion, despite Plaintiff's allegation that "Brookdale Properties was not a corporation . . . ."[4]

For much the same reason, we conclude that the trial court erred in sustaining the demurrer based on its determination that the duty to supervise Tibbs "did not follow [Defendant] after she left Brookdale Properties." According to the allegations of the complaint, which we must liberally construe in favor of Plaintiff's claims: Brookdale Properties was not a corporation; Brookdale Properties was not Tibbs' employer; and Defendant's duty to supervise Tibbs did not arise out of the fact that Defendant and Tibbs operated their business under the fictitious name "Brookdale Properties." Rather, Defendant's duty to supervise Tibbs arose out of her alleged status as Tibbs' employing broker. Plaintiff's allegation that Defendant "terminated her affiliation as broker for Brookdale Properties" before the transaction was completed is not enough, standing alone, to establish that Defendant terminated Tibbs' employment.

Our conclusion is bolstered by the statutory and regulatory requirements with which a broker must comply upon terminating a salesperson's employment. As outlined above, whenever a real estate salesperson's employment is terminated, the broker must "immediately notify" the DRE "in writing" of the termination. (Bus. & Prof. Code, § 10161.8, subd. (b).) And, "[u]pon the termination of employment of the salesperson, the broker [must] return the license certificate to the salesperson within three business days following the termination." (Cal. Code Regs., tit. 10, § 2753.) Not surprisingly,

---

[4]     In holding that "only the company would be liable for its salesperson's wrongful acts," the trial court relied on *Walters v. Marler* (1978) 83 Cal.App.3d 1. The issue in *Walters* was whether a corporation's qualifying broker—i.e., the licensed officer who qualified the corporation to obtain a real estate broker license—could be held vicariously liable for the acts of a salesperson who was employed by the corporation. (*Id.* at p. 35; see also *Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1438-1439.) Because Brookdale Properties is not a corporation, and because Tibbs was allegedly employed by Defendant—not Brookdale Properties—both parties agree *Walters* is inapposite.

11

Plaintiff does not allege in her complaint that Defendant took either of the steps that would have been required had she in fact terminated Tibbs' alleged employment.[5]

The allegation that Tibbs deposited Plaintiff's investment funds in a broker trust account (the "Brookdale Properties Escrow Account") that was allegedly maintained by Defendant as the sponsoring broker lends further support to the inference that Tibbs' employment continued after Defendant terminated her affiliation with the fictitious business name "Brookdale Properties." A salesperson who accepts funds in connection with any transaction requiring a license must immediately deliver the funds to the employing broker or, if directed by the broker, deposit the funds in a trust account maintained by the broker. (Bus. & Prof. Code, § 10145, subds. (a)(1) & (c).)[6] Accepting the allegation as true that Defendant maintained the trust account as sponsoring broker and authorized Tibbs to deposit Plaintiff's investment funds into the account, a reasonable inference can be drawn that Tibbs remained in Defendant's employ when Plaintiff executed the investment agreements and entrusted her money to Tibbs.

We conclude the complaint's allegations are sufficient to state a claim against Defendant on a theory of vicarious liability for Tibbs' alleged misconduct.

---

[5]   Defendant will of course have an opportunity to present evidence showing that she complied with these requirements, if such evidence exists, with a motion for summary judgment or at trial. We observe only that, on the pleadings, the absence of any allegation that Defendant complied with these requirements supports the inference that Tibbs' employment may have continued through the completion of the underlying real estate investment transaction, notwithstanding the allegation that "[o]n or about July 1, 2007, [Defendant] quietly terminated her affiliation as broker for Brookdale Properties with the DRE."

[6]   We note that the broker trust account must be held in the broker's name, "or in a fictitious name if the broker is the holder of a license bearing such fictitious name . . . ." (Cal. Code Regs., tit. 10, § 2832, subd. (a).) When the account was opened, Defendant's broker license allegedly bore the fictitious name "Brookdale Properties." Notwithstanding the allegation that Defendant cancelled this fictitious name, an inference can nevertheless be drawn that she left the account open, as alleged, in spite of this regulatory requirement.

12

**DISPOSITION**

The judgment is reversed and the order sustaining Defendant's demurrer is vacated.  Plaintiff is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.