Filed: 12/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GEORGINA ESPINOZA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WAREHOUSE DEMO SERVICES, INC., <br><br> Defendant and Respondent. | A165820 <br><br> (Santa Clara County Super. Ct. No. 17CV310844) |

This appeal presents the question of whether an employee working at a fixed site not owned or leased by the employer is subject to the outside salesperson exemption where the employer controls the employee's hours and working conditions. Plaintiff and appellant Georgina Espinoza appeals a judgment in favor of defendant and respondent Warehouse Demo Services, Inc. following the trial court's order granting its motion for summary judgment. The subject dispute involved a class action suit in which various Labor Code violations were alleged against respondent as the employer. The trial court granted respondent's motion and found that the outside salesperson exemption applied because appellant did not work at a site owned or controlled by respondent and therefore worked away from respondent's place of business. The trial court did not reach respondent's arguments in support of summary adjudication.

On appeal, we hold that the pertinent inquiry as to whether an employee works away from the employer's place of business is not whether

1

the employer owns or controls the work site, but the extent to which the employer maintains control or supervision over the employee's hours and working conditions. Here, respondent assigned appellant to work not only at a fixed site, but within a small, designated area within this site during each shift. Appellant was required to clock in and out at every shift, was responsible for maintaining her designated area, and could not leave this designated area during her shift unless another employee came to relieve her for a break. The outside salesperson exemption was created because it has historically been difficult for an employer to control or monitor outside salespersons who control their own hours and schedule. The purpose of the exemption would not be served here where appellant's hours and schedule were carefully monitored and controlled by respondent. Accordingly, we reverse.

As we hold that appellant did not work away from respondent's place of business for purposes of the outside salesperson exemption, we need not reach the issue of whether appellant was engaged in "selling" under the exemption.

## I. BACKGROUND

### A. Facts

Respondent is the exclusive or in-house product demonstration company for Costco Wholesale (Costco). Respondent employs demonstrators (sometimes referred to as sales advisors) to perform demonstrations of various products inside Costco warehouses. These demonstrators are classified as "part-time, nonexempt, hourly employees eligible for overtime pay according to state and federal law." Demonstrators are generally assigned to a single Costco and do not travel from warehouse to warehouse.

2

Respondent collects floor space rent from the vendors it demonstrates products for and remits these payments to Costco on a monthly basis.

Respondent does not lease any portion of Costco but maintains an office space within each Costco where it provides demonstrations. Respondent stores its equipment in this space and has a desk for its managers to do paperwork and check email. Employees also clock in and out here on a tablet device. Further, as part of respondent's agreement with Costco, demonstrators are responsible for cleaning up their work or demonstration areas at the end of their shifts, as well as "maintaining their Work Area in a safe and sanitary condition." This includes cleaning up any spills in this area if the demonstration is of a food product. On average, respondent assigns 22 to 25 demonstrators, one event manager, and two shift supervisors to each Costco location. Event managers are salaried employees and handle managerial tasks such as scheduling demonstrators, setting sales quotas, and handling paperwork. Shift supervisors help cover demonstrations and assist with paperwork.

Appellant was employed by respondent as a demonstrator from 2011 to approximately 2016. At the start of her employment, appellant received a booklet from respondent titled, "Demonstrator Handbook." Her stated job summary was to "[p]erform product demonstrations and drive sales with friendly member interaction, enthusiastic product information, and sample availability." The handbook included instructions on how to set up for a demonstration upon arriving at Costco and a "Demo Quality Checklist" that included tips on how to provide "[f]riendly member interaction" and "[e]nthusiastic [p]roduction [i]nformation" in order to drive sales. The handbook also provided that a supervisor would "work hands-on with [the

demonstrator] to perform the highest quality demo as outlined in the Demo Quality Checklist."

Appellant worked at three Costco locations in the South Bay during her employment with respondent; first at the Almaden location for about five years, then at the Gilroy location for about a year and a half, and then at the Salinas location for a few weeks. Appellant worked four days a week and her regular shift lasted for six hours. Upon arriving at Costco, appellant went to respondent's office in the back of the store, clocked in, reviewed her assignment to see what she would be selling or promoting that day, got her supplies and equipment, set up her cart and took it out to the floor near the product, and started demonstrating and promoting the product.[1]

Respondent's policy was that demonstrators could not leave their demonstration areas unattended at any time during their six-hour shifts. Because of this, appellant could only leave her demonstration area to take a break when an assigned "breaker" (another demonstrator) came to relieve her. At the end of her shift, appellant had 15 minutes to take her cart back to the office, wash her dishes, and put her supplies away. Appellant then waited for her turn to clock out on the tablet device. Appellant had to input her lunch break time when she clocked out.

B. Motion for Summary Judgment

Appellant filed a class action complaint against respondent that alleged various Labor Code violations, including failure to pay wages and/or overtime

---

[1] Respondent had a sales incentive program in place in which demonstrators could earn bonuses if certain daily sales goals were met. Demonstrators could earn up to 250 points per day and receive a $40 bonus after accumulating 7,500 points. Appellant received one $40 bonus during her employment.

4

(Lab. Code,[2] §§ 510, 1194, 1199), failure to provide meal breaks (§§ 226.7, 512), and failure to provide rest breaks (§ 226.7). Respondent filed a motion for summary judgment on the grounds that appellant lacked standing to bring the subject claims because she fell under the outside salesperson exemption (§ 1171).[3] Respondent argued that appellant met the requirements for an "outside salesperson" because she was engaged in selling away from respondent's place of business, as respondent did not own or lease space at Costco. Therefore, the requirements for overtime, wages, and meal and rest breaks did not apply to her. Notwithstanding this argument, as we have already noted, respondent's stated policy included paying overtime to demonstrators like appellant.

In the alternative, respondent argued it was entitled to summary adjudication as to the first cause of action for failure to pay wages and/or overtime because appellant's off-the-clock claim based on her time spent waiting in Costco's security line after her shifts did not constitute compensable work. Respondent further argued that appellant's claim for unlawful time-rounding by respondent failed because appellant benefited from this rounding in the form of overpayment.[4]

Appellant's opposition argued that respondent did not meet its burden of showing that appellant qualified as an "outside salesperson." Appellant

---

[2]     All further statutory references are to the Labor Code, unless otherwise specified.

[3]     Appellant argued to the trial court that respondent waived the outside salesperson exemption by failing to assert it as an affirmative defense in its answer. After supplemental briefing and a hearing on this issue, the trial court held that this defense was not waived as appellant had sufficient notice and an opportunity to conduct discovery on the issue.

[4]     In her opposition to the motion, appellant stated that she "has decided not to pursue the rounding claim . . . ."

contended that although respondent did not lease any space at Costco, it exerted extensive control and supervision over its office and demonstration areas within Costco such that appellant did not work "outside" of respondent's place of business for purposes of the outside salesperson exemption. Appellant further argued that the exemption does not apply because she spent a significant amount of time on non-sales tasks such as setting up her cart and preparing and demonstrating the product. In fact, appellant contended that demonstrators were instructed not to directly ask for a sale, but to inform customers where the product could be found within Costco in order to encourage its purchase.

In response to respondent's argument in support of summary adjudication, appellant argued that respondent failed to compensate her for the time she spent complying with respondent's security screening policy that was implemented by Costco and that this time constituted "hours worked" under California law.

C. The Trial Court's Ruling

Following oral argument, the trial court granted respondent's motion for summary judgment and did not reach the arguments made in support of summary adjudication. In holding that the outside salesperson exemption applied, the trial court's order extensively discussed *Moore v. International Cosmetics and Perfumes, Inc.* (C.D. Cal. 2016) 2016 WL 3556610 (*Moore*), an unpublished federal district court case cited by respondent in its moving papers. The trial court concluded that appellant did not work at respondent's place of business because respondent did not maintain, own, or control any space within Costco.

The court further concluded that appellant was engaged in sales activity because demonstrating products, like the court held in *Moore*,

6

constitutes sales. And while the exact time appellant spent on non-sales tasks was not calculated, the court held that it was "implausible that set up and end-of-shift clean up would take anywhere close to half of [appellant's] six hour shift."

Judgment was entered in favor of respondent and appellant now appeals.[5]

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A defendant meets this burden by showing that plaintiff "has not established, and cannot reasonably expect to establish" an essential element of his claim. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)

We review a grant of summary judgment de novo, which means we "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) In deciding whether a material issue of fact exists for trial, we "consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by

---

[5] Appellant filed a request for judicial notice that was opposed by respondent. We deny appellant's request as the requested documents were not presented before the trial court and judicial notice of these documents is not necessary to this opinion.

the court, and all inferences reasonably deducible from the evidence." (Code Civ. Proc., § 437c, subd. (c).) We view the evidence in the light most favorable to the plaintiff, as the nonmoving party. (*Saelzler*, *supra*, 25 Cal.4th at p. 768.)

B. The Outside Salesperson Exemption

"Outside salespersons" in California are exempt from statutory overtime, minimum wage, reporting time, and meal-and-rest break requirements. (§ 1171.) The Legislature tasked the Industrial Welfare Commission (IWC) to promulgate wage orders that fix "minimum wages, maximum hours, and standard conditions of labor for all employees." (§ 1185.) Wage order No. 7-2001(2)(J) defines "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." This definition is codified at California Code of Regulations, title 8, section 11070, subdivision (2)(J). Based on this definition, to qualify as an "outside salesperson," an employee must 1) work more than half the time away from his or her employer's place of business; and 2) be engaged in sales.

The main reason for this exemption is because outside salespersons generally control their own hours and are paid on a commission basis. (*Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 897.) The Division of Labor Standard Enforcement (DLSE), quoting from the transcript of a 1996 IWC meeting, stated, "Outside salesmen have historically been exempt 'because it's very difficult to control their hours and working conditions. They set their own time, and they're on the road, they call on their customers . . . . [R]arely do you know what they're doing on an

8

hour-to-hour basis.' " (Dept. of Industrial Relations, DLSE Opn. Letter No. 1998.09.08 (Sept. 8, 1998) p. 2.)[6]  A classic example that may come to mind is a door-to-door vacuum salesperson who is on the road traveling from residence to residence.

### 1. *Appellant Did Not Work Away from Respondent's Place of Business*

In its motion for summary judgment, respondent relied on the DLSE's 1998 letter in arguing that for the outside salesperson exemption to apply, an employer's "place of business" means property that is "owned or controlled by [the] employer."  In granting the motion, the trial court agreed and analogized the facts of this case to those in *Moore, supra*, 2016 WL 3556610, which also relied on the 1998 DLSE letter in holding that "place of business" must be property that is "owned or controlled" by the employer. (*Id.* at p. *5.)

Contrary to respondent's argument, the underlying facts in this case present the perfect example of when an employer can (and does) control its employees' hours and working conditions on property it does not own or lease.  First, respondent is Costco's in-house product demonstration company and is exclusive to Costco.  Although respondent is headquartered in Washington, all of its event managers, shift supervisors, and demonstrators are assigned to work in Costco warehouses.  In other words, Costco is the *only* place respondent conducts business via its demonstration

---

[6]  "While [opinion] letters from an administrative agency are not binding authority, they may be persuasive [citation] and may be deferred to when the issue is not governed by clear expression in the statute." (*Fenning v. Glenfed, Inc.* (1995) 40 Cal.App.4th 1285, 1295, fn. 4.)  Here, we find the DLSE letter to be persuasive, especially given the lack of authority from appellate courts on the issue of what constitutes "away from the employer's place of business" for purposes of the outside salesperson exemption.

of products.  Though it leases no space within Costco, respondent maintains an office inside each warehouse where its employees can clock in and out, store and clean equipment, and handle paperwork.  For all intents and purposes, respondent operated out of and treated all these different Costco warehouses as their satellite branches or offices.

Second, unlike the typical traveling salesperson who sets his or her own hours and decides when and where to work, appellant had a set schedule every week and worked six-hour shifts.  She clocked in before she started working, clocked out after she stopped working, and reported her lunch breaks when she clocked out.  Appellant was only assigned to work at one Costco location at a time, and in fact worked at the Almaden location for about five years before transferring to another Costco.  Appellant was supervised and her schedule and sales quota were set by an on-site event manager who had been assigned to her warehouse by respondent.

As a stark contrast to the freedoms enjoyed by a traveling salesperson or a route sales representative like the one in *Ramirez v. Yosemite Water Co* (1999) 20 Cal.4th 785, appellant was not only assigned to one Costco location, but was required to remain in one designated area within that Costco for almost the entirety of her six-hour shift.  The only time appellant could leave her designated area was when another demonstrator came to relieve her so that she could take a break.  The very reason the outside salesperson exemption was created was because it was difficult for employers to monitor and control the hours of employees who regularly traveled or were on the road.  The exemption was not intended to apply to employees like appellant whose hours, schedule, and (exact) location of work are controlled by their employer.

Due to the trial court's heavy reliance on *Moore,* we will briefly discuss its facts and legal conclusions. In *Moore, supra,* 2016 WL 3556610, the plaintiff was a fragrance sales consultant employed by the defendant (a cosmetics and perfume company) "to sell perfume to shoppers at retail stores that carry [the defendant's] licensed products." (*Id.* at p. *2.) Unlike appellant, the employees in *Moore* were instructed to work at different retail locations with varying hours and did not receive any direct or in-person supervision from their employer. (*Ibid*.) By contrast, as we have already mentioned, appellant reported to a single Costco location over an extended period of time (in one instance for five years), had set six-hour shifts, and was supervised by an on-site event manager plus two shift supervisors. Respondent also had an office located inside Costco where appellant (and presumably other demonstrators) went to clock in, retrieve supplies and equipment, and to clock out during every shift.

Further, we disagree with *Moore's* legal interpretation of the DLSE's 1998 letter as requiring that a property must be owned or controlled by the employer to constitute its place of business. *(Moore, supra,* 2016 WL 3556610, at p. *5.) The 1998 DLSE letter did not state that an employer *must* own or control a property for it to be considered its "place of business" for purposes of the exemption. The letter was written in response to a specific question of whether employees of a home builder who worked in temporary trailers and model homes miles away from the employer's office fell within the outside salesperson exemption. (Dept. of Industrial Relations, DLSE Opn. Letter No. 1998.09.08, *supra*, at p. 1.) The DLSE concluded that an employer's place of business was not limited to its principal place of business or headquarters and that these employees did not fall within the exemption. (*Id.* at pp. 1–2.) The DLSE reasoned that "[a]n employer can

11

more easily control and monitor the hours and working conditions of salespersons who perform their sales work on property that is owned or controlled by the employer." (*Id*. at p. 2.) This included property miles away from the employer's main office. However, this does not mean that the *only* way an employer can control its employees' hours and working conditions is if it owns or controls the premises on which the employees work, as evidenced by the facts in this case.

### 2. *Whether Appellant Was Engaged in Selling*

Since we conclude that appellant did not work "away" from respondent's place of business, we need not decide whether appellant was engaged in "selling" as the outside salesperson exemption does not apply regardless of how this issue is decided.

### C. Motion for Summary Adjudication

When it granted summary judgment, the trial court did not reach respondent's alternative motion for summary adjudication. Respondent requests, in the event we reverse, that we grant summary adjudication as to the first, fifth, sixth, and seventh causes of action or remand the matter to the trial court to resolve the issues raised in respondent's motion for summary adjudication. We decline respondent's invitation to rule on its motion for summary adjudication and elect to remand the matter to the trial court to decide these issues in the first instance.

## III. DISPOSITION

We reverse the order granting summary judgment in favor of respondent. This matter is remanded to the trial court to address the issues raised in respondent's motion for summary adjudication. Appellant is entitled to her costs on appeal.

_____

                                    WISEMAN, J.*

We concur.

_____

JACKSON, P.J.

_____

BURNS, J.

*Espinoza v. Warehouse Demo Services* / A165820

_____

        *Retired Associate Justice of the Court of Appeal, Fifth Appellate
District, assigned by the Chief Justice pursuant to article VI, section 6 of the
California Constitution.

A165820 / Espinoza v. Warehouse Demo Services

Trial Court:Superior Court of Santa Clara County

Trial Judge:        Hon. Thomas E. Kuhnle

Counsel:     Kingsley & Kingsley; Ariel J. Stiller-Shulman, Jessica L. Adlouni, and Eric Bryce Kingsley, for Plaintiff and Appellant.

Littler Mendelson; Yesenia Garcia Perez, Gregory G. Iskander, and Natalie Marie Kuzma, for Defendant and Respondent.