Filed 3/7/14  Weseman v. Hertle CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER WESEMAN et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>JOHN WILLIAM HERTLE,<br><br>Defendant and Respondent. | F065375<br><br>(Super. Ct. No. 670699)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

Mayall Hurley, Nicholas J. Scardigli and John P. Briscoe for Plaintiffs and Appellants.

Law Offices of Brunn & Flynn, Timothy T. Flynn and John K. Peltier for Defendant and Respondent.

-ooOoo-

This is an appeal from a judgment of the Superior Court of Stanislaus County. Appellants, Christopher and Angela Weseman,[1] leased a single-family unit at a complex managed by respondent, John William Hertle. Hertle hired Chris to report incidents, maintain the complex, and perform other tasks for a monthly rent reduction. Angela was informed by one of Hertle's employees that she was hired to do the same. The Wesemans served in this capacity for the period August 1, 2009 to January 31, 2011, at which point Hertle terminated Chris's services. The Wesemans subsequently claimed unpaid wages, interest, penalties, fees, and costs pursuant to Labor Code section 1194, inter alia. The superior court found neither Chris nor Angela to be an employee and ruled in favor of Hertle. On appeal, the Wesemans contend the judgment was not supported by substantial evidence and the statement of decision did not adequately explain the court's determination as to the material issue of employment status. We find substantial evidence an employment relationship did not exist. Hertle did not have complete or authoritative control over the results of the Wesemans' work. We also find the statement of decision adequately disclosed the basis for the judgment.

---

[1] In this opinion, we distinguish between appellants by their first names. No disrespect is intended.

In keeping with the way appellants were referenced in the trial court pleadings, exhibits and settled statement, we will refer to Christopher as Chris. Angela was sometimes referenced as Angie in the record.

## FACTUAL HISTORY[2]

Hertle, a licensed real estate broker, owns and operates EXIT Realty Touchstone (EXIT) in Modesto, California.  He manages and facilitates purchases and sales of residential real property.  On June 15, 2007, Hertle was hired by Maurea "Ray" Mitchell to manage 15 two-bedroom single family units at 456 B Street in Empire, California (B Street).  He served in this capacity until late 2011.

Prior to May 26, 2009, one of B Street's residents functioned as Hertle's "'eyes and ears.'"[3]  For reduced rent, he apprised Hertle of what he observed on-site.  When this resident "disappeared," Hertle and Mitchell agreed to find someone else for the job.  On May 26, 2009, the Wesemans applied for one of the vacant units at B Street.[4]  They subsequently signed a lease and agreed to pay $625 per month.  The Wesemans lived at B Street from June 2009 to February 2012.  In July 2009, they were invited by Bertha Mercado, EXIT's receptionist, to apply for the "eyes and ears" position.  Hertle

---

[2]  The record consists of the clerk's transcript and, in lieu of the reporter's transcript, a settled statement.  (See Cal. Rules of Court, rule 8.137; see also *People ex rel. Dept. Pub. Works v. Bond* (1964) 231 Cal.App.2d 435, 437 ["Evidence to support the findings of fact and conclusions of law and the judgment must appear in the settled statement [citation]; we are bound to assume that enough appears in the settled statement to enable us to decide whether reversible error was committed; and we must make our ruling upon what is affirmatively shown by the record [citations]."].)

[3]  Unsurprisingly, the parties disagree on the name of the position:  Hertle favors "eyes and ears" while the Wesemans prefer "manager," "on-site manager," "landlord," and so forth.  "The label placed by the parties on their relationship is not dispositive …." (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 (*Borello*).)  Solely for the sake of consistency, we refer to the position as "eyes and ears."

[4]  Although the Wesemans indicated in their rental application that they had never been evicted, they later admitted that they had been evicted twice prior to May 26, 2009.  Hertle maintained that he would not have rented the unit to Chris or hired him as "eyes and ears" had he been aware of these evictions.

3.

interviewed Chris[5] and specified that "eyes and ears" maintained the property, picked up litter, posted three-day notices, and reported tenants' disputes, theft, vandalism, and other disruptions to EXIT's staff, all of which amounted to an estimated 10 to 20 hours of work per month. In return, "eyes and ears" received a monthly rent reduction. Hertle also advised that, outside of his "eyes and ears" role, Chris could submit bids for repair jobs at B Street. Shortly after the interview, with Mitchell's authorization, Hertle hired Chris. Mercado later informed Angela she was also hired.[6]

For the period August 1, 2009 to January 31, 2011, the Wesemans served as "eyes and ears" for a monthly rent reduction of $175, later increased to $225 after March 31, 2010. Hertle provided a lawnmower to Chris for use in maintenance and told him how, when, and where to post three-day notices, but otherwise did not offer directions concerning his duties. He did not authorize either Chris or Angela to collect rent, screen tenants, negotiate leases, investigate crimes, or make citizen's arrests. Mercado, who regularly communicated with the Wesemans via telephone and e-mail, occasionally instructed them to check pets, post advertisements, show vacant units, and notify her about potential tenants. Kimberly Baker and Linda Mello, two of EXIT's other employees, gave instructions regarding smoke detector inspections and other maintenance-related matters.

The Wesemans testified they monitored B Street, listened to tenants' complaints, picked up garbage, chased away trespassers, posted advertisements, showed vacant units

---

[5]    Angela, who drove Chris to EXIT's office for the interview, waited in the car.

[6]    Hertle denied that he hired Angela as "eyes and ears," but the record suggests that he and his staff treated her as such. For instance, in an e-mail dated August 31, 2010, Hertle thanked Angela for her help, counseled her regarding a tenant's cockroach infestation, and encouraged her to "[k]eep it up!" He also identified her in the termination letter dated January 31, 2011 (see *post*, p. 5).

three to five times,[7] and cooperated with police officers dispatched to the complex. Chris fixed pilot lights, inspected smoke detectors, mowed lawns, performed yard work and other maintenance, checked pets, posted a three-day notice once, and cleaned the units. Angela distributed rental applications to prospective tenants, leased units, collected rent once, posted notices, and mediated domestic disputes. Between August 13, 2009 and February 2, 2011, she sent 600 e-mails to EXIT staff detailing various incidents and activities on-site. Chris worked an average of four-to-six hours daily while Angela worked between three and 12 hours daily.

Besides his duties as "eyes and ears," Chris submitted and won bids for three to four repair jobs at B Street, for which he was paid a total sum of approximately $3,000. He also advertised himself as an independent contractor on Craigslist and worked roughly twice a week for American Info Mart, a property maintenance company. In that capacity, Chris cleaned, secured, and maintained various real estate properties.

In a letter dated January 31, 2011, Hertle informed "Chris & Angie" their "services as on-site manager are no longer needed." On October 15, 2011, Mitchell hired Sandy Preston to replace Hertle. Preston testified she worked one to two hours daily as property manager of B Street and another 24-unit complex. She collected rent, paid bills, showed units, and scheduled maintenance calls.

## PROCEDURAL HISTORY

The Wesemans filed individual claims with the Labor Commissioner on July 22, 2011, for unpaid wages, interest, and penalties. Following a hearing, the commissioner awarded each $1,332.45. The Wesemans appealed to the superior court, which

---

**7** Hertle and Baker testified that prospective tenants who wanted to look at a vacant unit usually needed to visit EXIT's office and put down a $20 deposit for the key. They inspected the unit on their own and rarely, if ever, interacted with the Wesemans. Nonetheless, Hertle did not dispute that Chris showed units on occasions when the latter was performing maintenance on those units and already possessed the keys.

conducted a de novo bench trial. The court found neither Chris nor Angela to be an employee. In its statement of decision,[8] the superior court detailed both the plaintiffs' position and the defendant's position and then made the following findings:

> "The Court finds that the Plaintiffs were simply not credible. The testimony of Sandra Preston stands in vivid contrast to that of the Plaintiffs. Ms. Preston is a true property manager because her duties exceed those duties which Plaintiffs claim to have performed. For example, Ms. Preston actually collects rents, pays bills, shows the units and schedules maintenance. In addition, Ms. Preston manages forty (40) units, including those units in question here. Ms. Preston testified that she spends four (4) to ten (10) hours per week managing the forty (40) units. [¶] … [¶][9] … [T]he Court finds against Plaintiffs on all causes of action and all legal theories that they have advanced in this matter. The Court finds that neither Defendant nor Ray Mitchell engaged the services of Plaintiff ANGELA WESEMAN. The Court further finds that Ray Mitchell … engaged the services of Plaintiff CHRISTOPHER WESEMAN as an independent contractor in his role as 'eyes and ears' at 456 B Street in Empire, California."

The Wesemans filed a notice of appeal on June 25, 2012.

---

**8** Over the Wesemans' objection, the court adopted Hertle's proposed statement of decision.

**9** The court further remarked:

> "In addition, each Plaintiff committed fraud on his and her rental application at [456] B Street by denying two (2) previous evictions. The Court finds that it is probable that Defendant would not have rented a residence to the Plaintiffs had Plaintiffs been truthful in their response to the question about eviction. Defendant thus would not ever have retained Plaintiffs in any sort of an 'eyes and ears' capacity. Plaintiffs' fraud on the applications for a rental unit at 456 B Street in Empire is sufficient to bar any recovery by either of them in this matter."

Because our holding hinges on the issue of employment status, we need not address the Wesemans' contention that the court improperly applied the after-acquired-evidence doctrine.

6.

## DISCUSSION

The question before us is whether substantial evidence supported the superior court's judgment[10] and whether the statement of decision provided adequate findings regarding employment status.[11]

**I.** **Substantial evidence supports the superior court's judgment that the Wesemans were not Hertle's employees.**

a. *Standard of Review*

Under the general rules applicable to a trial court's statement of decision, an appellate court applies the substantial evidence rule to findings of fact. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513; see also *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50 & fn. 11 [appellate court reviews entire record as well as statement of decision to determine whether substantial evidence supports trial court's judgment].) "'[T]he determination of employee or independent-contractor status is one of fact ….' [Citation.] As a result, appellate case law in this area arises primarily in the context of substantial evidence review of the determinations of the relevant fact finder." (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 78.)

---

[10] The Wesemans ask us to review de novo the issue of employment status. We decline. Ordinarily, the question of whether an individual engaged to perform services for another is an employee or independent contractor is one of fact and subject to the substantial evidence rule. The question becomes one of law only if a single conclusion may be inferred from the facts. (See *Borello*, *supra*, 48 Cal.3d at p. 367.) In view of the record, we find de novo review inappropriate.

[11] Hertle asserts that the Wesemans cannot challenge the adequacy of the statement of decision because they did not specifically raise this argument in the settled statement. (See Cal. Rules of Court, rule 8.137(b)(2) ["If the condensed narrative describes less than all the testimony, the appellant must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise."].) We disagree. In the instant case, the settled statement reads, in part: "The issue[] on appeal [is] whether the Court erred … in 'finding against the Plaintiffs on all causes of actions and all legal theories that they have advanced in this matter.'" We construe this language to encompass the Wesemans' argument.

In an earlier decision, we explained the substantial evidence rule:

"'"'Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that … the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." [Citation.]' [Citations.] [¶] Moreover, we defer to the trier of fact on issues of credibility. [Citation.] '[N]either conflicts in the evidence nor "'testimony which is subject to justifiable suspicion … justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" [Citations.]'" (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968; see also *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts."].)

Substantial evidence is reasonable, credible, of solid value, and of ponderable legal significance. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) A judgment will be upheld if it is supported by substantial evidence, even if substantial evidence to the contrary also exists and the trial court might have rendered a different result had it believed this evidence. (*In re Dakota H.*, *supra*, at p. 228; see also *In re Michael G.* (2012) 203 Cal.App.4th 580, 589 ["The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts."].)

b. *Analysis*

"[W]hen a statute fails to define the term 'employee,' courts routinely look at the common law definition for guidance …." (*Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1626.) Traditionally, whether the hirer has the right to control the manner and means of accomplishing the desired result is the most significant indicium of an employment relationship. (See *Borello*, *supra*, 48 Cal.3d at

8.

p. 350.) The Supreme Court has recognized at least 14 additional "'secondary'" factors to consider: (1) whether the hirer has the right to discharge at will; (2) whether the individual engaged to perform services for the hirer is also engaged in a distinct occupation or business; (3) whether the work is usually performed under the direction of the hirer or by a specialist without supervision; (4) the skill needed to perform the work; (5) whether the hirer supplies the instrumentalities, tools, and place of work; (6) how long the services are to be performed; (7) whether payment is based on time or by the job; (8) whether the work is part of the hirer's regular business; (9) whether the parties believe they are creating an employment relationship; (10) the putative employee's opportunity for profit or loss depending on managerial skill; (11) the putative employee's investment in equipment or materials required for the task, or his employment of helpers; (12) whether the service rendered requires a special skill; (13) the degree of permanence of the relationship; and (14) whether the service rendered is an integral part of the hirer's business. (*Id.* at pp. 350-351, 355.) These indicia "'cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' [Citation.]" (*Id.* at p. 351, fn. omitted.) "The prevailing view is to consider the totality of the circumstances, reflect[] upon the nature of the work relationship between the parties, and plac[e] emphasis on the control exercised by the [putative] employer over the [putative] employee's performance of … duties." (*Bradley v. Department of Corrections & Rehabilitation*, *supra*, at p. 1626.)

Control remains the principal factor in determining employment status. (*Varisco v. Gateway Science & Engineering, Inc.* (2008) 166 Cal.App.4th 1099, 1103.) Specifically, "'the right to exercise complete or authoritative control, rather than mere suggestion as to detail, must be shown. [Citations.]'" (*Ibid.*; see also *McDonald v. Shell Oil Co.* (1955) 44 Cal.2d 785, 790 [hirer of independent contractor may exercise broad general power of supervision and control over the results of the work to ensure satisfactory performance, including the right to inspect, the right to stop the work, the

9.

right to make suggestions or recommendations as to details for the work, and the right to prescribe alterations or deviations in the work, without creating an employment relationship].)  EXIT's staff routinely interacted with the Wesemans via telephone and e-mail and instructed them to perform certain tasks, but did not direct them to do so in any particular manner.  Hertle gave instructions to Chris about posting three-day notices and supplied a lawnmower for use in maintenance, but otherwise offered minimal guidance.  Meanwhile, the Wesemans served as "eyes and ears" at B Street without supervision and were vested with the discretion to determine precisely how to carry out their assorted duties.  These circumstances do not evince Hertle's complete or authoritative control over the Wesemans.  Moreover, the record shows that Chris advertised himself as an independent contractor on Craigslist and performed services for a separate property maintenance company.  Substantial evidence supports the superior court's ruling that neither Chris nor Angela were Hertle's employees.

## II.     The superior court adequately disclosed the basis for its judgment in the statement of decision.

Upon the request of any party in a nonjury trial, the superior court shall issue a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues …."[12]  (Code Civ. Proc., § 632.)  "[A] statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case." (*Central Valley General Hospital v. Smith*, *supra*, 162 Cal.App.4th at p. 513.)  An ultimate fact refers to a core fact, such as an essential element of a claim, and is distinguished from evidentiary facts and legal conclusions.  (*Ibid.*; see also *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 ["A statement of decision need not address all the legal and factual issues raised by the parties.  Instead,

---

[12]     The court may issue a statement of decision sua sponte.  (See *In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 476-477, fn. 7.)

10.

it need do no more than state the grounds upon which the judgment rests, without necessarily specifying the particular evidence considered by the trial court in reaching its decision."]; cf. *Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1127, 1129 [minute order enumerating legal conclusions and lacking any explanation does not constitute a proper statement of decision].) A material issue is "'relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case.'" (*R. E. Folcka Construction, Inc. v. Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 53, quoting *Kuffel v. Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 565.)[13]

We find the statement of decision adequate.[14] Regarding the essential element of employment status (see *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1198 [an employee may assert statutory labor claims while an independent contractor cannot]; *Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 897 [minimum wage laws do not apply to individuals who do not qualify as employees under common law "control" rule]), the superior court determined that neither Chris nor Angela were Hertle's employees. Therefore, neither was eligible to advance a wage claim. The court highlighted the Wesemans' lack of credibility and Preston's testimony. Although the Wesemans assert that the court should have articulated its findings as to each indicium of employment, it was under no obligation to do so. (See *Muzquiz v. City of Emeryville*, *supra*, 79 Cal.App.4th at p. 1125 ["'[A] trial court rendering a statement of

---

[13]    In *R. E. Folcka Construction, Inc. v. Medallion Home Loan Co.*, *supra*, 191 Cal.App.3d at page 54, the Fourth Appellate District found no meaningful distinction between the terms "'material'" and "'principal.'"

[14]    Even if we found otherwise, the error would be deemed harmless "unless the evidence is sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings." (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 68; *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 745.)

11.

decision under [Code of Civil Procedure] section 632 is required to state only ultimate rather than evidentiary facts because findings of ultimate facts necessarily include findings on all intermediate evidentiary facts necessary to sustain them. [Citation.]' [Citations.]"].)

## DISPOSITION

The judgment of the superior court is affirmed. Costs on appeal are awarded to respondent.

_____
DETJEN, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
PEÑA, J.